## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **WAHIID M. ALAMIIN a/k/a** ) | |
| **JAMES SHOCKEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-13-1001-F** |
| ) | |
| **ROBERT PATTON et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Wahiid M. AlAmiin, formerly James Shockey, brings this federal civil rights action against nine Defendants, asserting claims under 42 U.S.C. § 1983 for violations of the United States Constitution and under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").[1] United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636. This Report and Recommendation addresses ODOC Defendants' invocation of Eleventh Amendment immunity and all claims alleged in Counts One and Count Three of Plaintiff's Complaint.

## PLAINTIFF'S CLAIMS AND RELIEF SOUGHT

Plaintiff is an Oklahoma state prisoner currently housed at Lawton Correctional Facility ("LCF"), a private prison owned and operated by GEO Group Inc. ("GEO"), pursuant to a contract with the Oklahoma Department of Corrections ("ODOC"). *See*

---

[1] 42 U.S.C. §§ 2000cc to 2000cc-5.

Compl. (Doc. No. 1) at 1 & nn.1-3.[2]  In his three-count Complaint, Plaintiff asserts claims against former ODOC Director Justin Jones; former ODOC Director Robert Patton;[3] ODOC employees Debbie Morton and Genese McCoy; GEO-LCF employees Connie Danley, Dean Caldwell, Nancy Fennell, and Billy Gibson; and Imad Enchassi. *See id.* at 1-3.  Defendant Patton is sued in his official capacity only, and Defendant Jones is sued in his individual capacity only.  *See id.* at 1; Doc. No. 33.  All other Defendants are sued in both their official and individual capacities.  *See* Compl. at 2-3.

Plaintiff's claims arise from events alleged to have occurred while he has been housed at LCF.  *See id.* at 3-15; Pl.'s Aff. (Doc. No. 1-1, at 1-9).  Through this lawsuit, Plaintiff seeks various forms of relief, including compensatory and punitive damages, declaratory judgment, and injunctive relief, based upon actions of Defendants that allegedly violated and are violating Plaintiff's rights under RLUIPA and under the First, Sixth, Eighth, and Fourteenth Amendments.  *See* Compl. at 3-15.

In Count One, Plaintiff invokes RLUIPA and the First Amendment, alleging (a) there was a conspiracy between officials at ODOC and LCF to establish a "pseudo-halal"

---

[2] Citations to documents filed in this Court use the page numbers assigned by the Court's electronic filing system.

[3] After this lawsuit was filed, Defendant Patton replaced Defendant Jones as ODOC Director and was substituted as the named Defendant on all official-capacity claims initially raised against Defendant Jones.  *See* Doc. Nos. 31, 33.  Because Defendant Patton is no longer ODOC Director, the current Director should be substituted as Defendant if any official-capacity claims alleged against the ODOC Director remain after disposition of this Report and Recommendation.  *See* Fed. R. Civ. P. 25(d); *Director's Office*, Okla. Dep't of Corr., https://www.ok.gov/doc/Organization/Director's_Office/index.html (last visited Aug. 19, 2016).  To reduce confusion, the undersigned refers to all Defendants as they are identified in the Complaint and in their briefs.

policy to deny Plaintiff and others a proper halal diet, and (b) that Plaintiff has been denied a proper halal diet, substantially burdening Plaintiff's free exercise of his sincerely held religious beliefs. *See id.* at 8-9; *see also id.* at 11, 13-15.[4]  In Count Three, Plaintiff alleges that Defendants have violated RLUIPA and the First and Eighth Amendments by failing to comply with an order and judgment entered in a previous lawsuit in this Court and that this "court order mandate" requires GEO/LCF to provide Plaintiff "with a nutritional Halaal diet consistent with [P]laintiff's sincerely held beliefs." *Id.* at 3, 6, 11, 13-15 (citing *AlAmiin v. Miller*, No. CIV-08-1371-F (W.D. Okla.) [hereinafter *Miller*]); *see also AlAmiin v. Morton*, 528 F. App'x 838 (10th Cir. 2013).

## MATTERS CONSIDERED

Currently at issue are three potentially dispositive motions.  Defendants Caldwell, Danley, and Fennell (collectively, "LCF Defendants") have jointly filed a Motion to Dismiss/Motion for Summary Judgment.  *See* LCF Defs.' Mot. (Doc. No. 60); Doc. No. 76.  Defendants Patton, Jones, McCoy, and Morton (collectively, "ODOC Defendants") have jointly filed a Motion to Dismiss/Motion for Summary Judgment.  *See* ODOC

---

[4] As the Tenth Circuit has explained regarding halal (or "halaal") diets:

> There are varying Islamic dietary traditions among Muslims, some more strict than others. According to the Islamic Food and Nutrition Council of America (IFANCA) and Islamic Services of America (ISA), a "halal," or "lawful" diet, prohibits items deemed "haram" (or "unlawful"), including pork and its by-products, animals improperly slaughtered or killed, alcohol and intoxicants, blood and blood by-products, and foods contaminated with haram products.  Food containing gelatin, enzymes, and emulsifiers are questionable because of their unclear origins; they may be halal or haram.

*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1313 (10th Cir. 2010) (citation omitted).

Defs.' Mot. (Doc. No. 67). Defendant Enchassi, who is not employed by either GEO or ODOC, has filed his own Motion to Dismiss/Motion for Summary Judgment. *See* Def. Enchassi Mot. (Doc. No. 72); *see also* Compl. at 2 n.4 (alleging that Defendant Enchassi is the leader of the Islamic Society of Greater Oklahoma City). Plaintiff has responded to all three Motions. *See* Pl.'s Resp. (Doc. No. 98). The moving Defendants elected not to reply to Plaintiff's Response. *See* Doc. No. 103. The ODOC and LCF Defendants additionally have filed a Special Report (S.R., Doc. No. 59) and a Supplement to the Special Report (Suppl. to S.R., Doc. No. 66) in accordance with the Court's order and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Following discovery and completion of all briefing, Defendants' Motions are ripe for decision.[5]

For simplicity, the undersigned enters three Report and Recommendations with respect to Plaintiff's claims and Defendants' motions. Herein, the undersigned addresses

---

[5] All Defendants titled their filings "Motion to Dismiss/Motion for Summary Judgment," and, with respect to certain issues, rely on materials outside of the Complaint and public record. *See* LCF Defs.' Mot. at 7-12, 14-27; ODOC Defs.' Mot. at 10-12, 13, 16-35, 36-39; Def. Enchassi Mot. at 4, 5-9. In opposition, Plaintiff—whose response is titled "Plaintiff's Opposition to the Defendants' Collective Summary Judgment Motions"—expressly relies upon the summary judgment standards of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, and he presents over 50 pages of documentary evidence, as well as physical items of evidence. *See* Pl.'s Resp. at 1-31; Pl.'s Resp. Exs. 1-18 (Doc. Nos. 98-1 to 98-18). It is evident from Plaintiff's Response that Plaintiff was on notice to present, and did present, all material pertinent to Defendants' Motions and that Plaintiff desired the Court to consider materials outside of the pleadings in ruling on these Motions. And, Plaintiff and Defendants have conducted discovery in connection with Defendants' Motions. *See* Doc. Nos. 79, 83, 85, 90, 91. Accordingly, the undersigned has treated the Motions as requests for summary judgment with respect to nonexhaustion of administrative remedies, qualified immunity, and other specified issues. *See* Fed. R. Civ. P. 12(d), 56(c)(1); *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000).

ODOC Defendants' assertion of Eleventh Amendment immunity and Counts One and Three of Plaintiff's Complaint. Count Two and Plaintiff's claims against unserved Defendant Billy Gibson are addressed separately.

ANALYSIS

## I. ODOC Defendants' Immunity to Suit

Citing the Eleventh Amendment to the U.S. Constitution, ODOC Defendants Patton, McCoy, and Morton move to dismiss Plaintiff's federal claims to the extent they seek money damages from each ODOC Defendant in his or her official capacity. *See* ODOC Defs.' Mot. at 15-16; Fed. R. Civ. P. 12(b)(1). The Court therefore is obligated to address whether these Defendants enjoy immunity from suit. *See United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (noting that if a state defendant raises Eleventh Amendment immunity, "addressing the threshold jurisdictional matter [is] obligatory"); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000) (holding that Eleventh Amendment immunity "can be waived" but "constitutes a bar to the exercise of federal subject matter jurisdiction" when effectively asserted).

Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh Amendment, a federal court may not hear a claim brought by a private citizen against a U.S. state. U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996).

> But Eleventh Amendment immunity is not absolute. There are three exceptions. First, a state may consent to suit in federal court. Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment. Finally, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring

> suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.

*Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citations omitted). Eleventh Amendment immunity applies to any state agencies considered to be "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). A defendant's status as an arm of the state is a question of federal law, but courts make this determination by analyzing the "nature of the entity created by state law." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal quotation marks omitted).

"Oklahoma has not consented to be sued in federal court." *Berry v. Oklahoma*, 495 F. App'x 920, 921 (10th Cir. 2012); *accord Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006); *Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Nor has Congress abrogated state immunity through enactment of 42 U.S.C. § 1983 or RLUIPA. *See Berry*, 495 F. App'x at 921-22; *Sossamon*, 563 U.S. at 293. Thus, the State of Oklahoma's Eleventh Amendment immunity from suits seeking money damages in federal court remains intact.

Here, the relevant state agency is ODOC because the individual ODOC Defendants were employed by that agency during the events giving rise to this lawsuit. *See* Compl. at 1-2. "ODOC is . . . shielded by sovereign immunity because it is an arm of the state." *Berry*, 495 F. App'x at 922 (citing *Eastwood v. Dep't of Corr. of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988)). "This Eleventh Amendment bar also applies to RLUIPA claims." *Peterson v. Lampert*, 499 F. App'x 782, 786 (10th Cir. 2012) (quoting

*Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)). ODOC's immunity therefore extends to Plaintiff's § 1983 and RLUIPA claims against ODOC employees who are sued in their official capacities for damages. *See Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014); *accord Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, 561 F. App'x 661, 665 (10th Cir. 2014).

Defendants Patton, McCoy, and Morton, as employees of ODOC in their official capacities, therefore are protected by Eleventh Amendment immunity to the extent damages are sought by Plaintiff under § 1983 or RLUIPA. *See Cleveland*, 590 F. App'x at 730; *Eastwood*, 846 F.2d at 632. Accordingly, Plaintiff's claims seeking monetary relief from Defendants Patton, McCoy, and Morton in their official capacities are barred by the Eleventh Amendment and should be dismissed without prejudice.

## II.     Plaintiff's Count One: Halal-Diet Claims

In Count One, Plaintiff asserts: (a) a claim under 42 U.S.C. § 1983 that Defendants Jones and Enchassi conspired to create and implement an unlawful "pseudo-halal" diet policy that would substantially burden Plaintiff's free exercise of his sincerely held religious beliefs; and (b) claims under § 1983 and RLUIPA that Defendants Jones, McCoy, Morton, Caldwell, and Fennell have denied Plaintiff a proper and nutritious halal religious diet at LCF, substantially burdening Plaintiff's free exercise of his sincerely held religious beliefs. *See* Compl. at 8-9, 11, 14. In connection with the latter claim, Plaintiff also alleges acts of conspiracy and retaliation, which are addressed separately.

### A. Defendants' Motions for Dismissal of Certain Claims

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants assert various arguments for dismissal of Plaintiff's claims against them due to "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss under this Rule, the Court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (1991); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

1. <u>"Pseudo-Halal" Conspiracy Claim</u>

Plaintiff first alleges that Defendants Jones and Enchassi conspired to knowingly establish a "pseudo-halal" policy for ODOC. *See* Compl. at 2, 3-4, 8-9. Specifically, Plaintiff alleges that these Defendants acted jointly "to develop . . . spurious halaal protocols/procedures/policy" that resulted in denying Plaintiff a diet compliant with his rights under the First Amendment and RLUIPA. Compl. at 8.

The relevant Defendants seek dismissal of this claim as time-barred. *See* ODOC Defs.' Mot. at 14-15; Def. Enchassi Mot. at 9. As set forth below, it is evident from the pleadings that this claim is barred by the applicable statute of limitations.

*a. Two-Year Limitations Period*

For § 1983 claims, the limitations period "is dictated by the personal injury statute of limitations in the state in which the claim arose, and in Oklahoma, that period is two years." *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) (citation omitted) (citing Okla. Stat. tit. 12, § 95(A)(3)); *see, e.g.*, *Alexander v. Oklahoma*, 382 F.3d 1206, 1212 & n.1 (10th Cir. 2004). Although the length of the limitations period is determined by reference to the law of the forum state, the *accrual* of the federal cause of action is determined by federal law. *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998); *McCarty*, 646 F.3d at 1289.

> A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated. This requires the court to identify the constitutional violation and locate it in time.

*Smith*, 149 F.3d at 1154 (citations and internal quotation marks omitted).

Plaintiff's pleading reflects that he knew of the enactment of the policy he challenges, and that he believed that this policy was being applied to violate his rights, no later than June 1, 2011. On May 12, 2011, Plaintiff sought internal administrative relief at his facility for the implementation of a "pseudo-halaal policy." *See* Compl. at 9 (referencing a Request to Staff filed "to start grievance procedure against pseudo-halaal policy, on 5-12-11"). Plaintiff's administrative grievance documents, submitted with and incorporated into the Complaint, reflect that both in this administrative request, and in another submitted on June 1, 2011, Plaintiff contended that his religious beliefs regarding his diet were being violated as a result of the allegedly improper policy. *See* Compl. Ex. 1 (Doc. No. 1-1, at 10-69) at 12 (Request to Staff dated May 12, 2011, asking for explanation of halal diet), 13 (Grievance dated June 1, 2011, complaining that Plaintiff is being forced to eat an unlawful non-halal diet pursuant to the policy at LCF). Because Plaintiff was aware of the injury to him resulting from the challenged policy at the time of his administrative requests in 2011, Plaintiff's corresponding § 1983 conspiracy claim was required to be brought within two years thereof—i.e., no later than June 1, 2013. *See McCarty*, 646 F.3d at 1289; *Smith*, 149 F.3d at 1154.

Plaintiff's Complaint was not filed until September 12, 2013—over three months beyond that two-year mark.[6] Thus, unless Plaintiff's allegations reflect that he is entitled

---

[6] The envelope in which Plaintiff mailed his Complaint contains verification under penalty of perjury that he placed the pleading into his facility's mail system on September 12, 2013. *See* Doc. No. 1-2, at 1. The undersigned therefore considers the Complaint to

to tolling, his § 1983 conspiracy claim should be dismissed with prejudice as time-barred. *See Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128-29 (10th Cir. 1991) ("[A] dismissal on limitations grounds is a judgment on the merits."); *Parker v. Dinwiddie*, 258 F. App'x 200, 201 (10th Cir. 2007) (same); *see, e.g.*, *Pemberton v. Patton*, No. CIV-14-129-D, 2015 WL 1638638, at *4, *16-18 (W.D. Okla. Apr. 13, 2015) (dismissing § 1983 claims with prejudice due to untimeliness), *aff'd*, 639 F. App'x 532 (10th Cir. 2016).

### b. Tolling

Plaintiff first argues that he is entitled to statutory tolling of any time-barred claims. *See* Pl.'s Resp. at 9-12. Citing *Roberts v. Barreras*, 484 F.3d 1236 (10th Cir. 2007), Plaintiff asserts that the statute of limitations was tolled while he sought administrative relief on his complaints as required by the Prison Litigation Reform Act ("PLRA"). *See* Pl.'s Resp. at 9-10; *Roberts*, 484 F.3d at 1241-43. In *Roberts*, the Tenth Circuit held that the prisoner-plaintiff would be entitled to statutory tolling under New Mexico law during the time he pursued his mandatory grievances remedies, pursuant to a New Mexico statute requiring tolling during the pendency of a "lawful proceeding." *Roberts*, 484 F.3d at 1242-43; *see also id.* at 1241 ("[I]n a § 1983 suit, state tolling rules, not federal ones, apply."). Because *Roberts* is premised upon the application of New Mexico law, and the application of tolling to Plaintiff's federal civil rights claims is governed by Oklahoma law, Plaintiff's reliance on that case is misplaced. *See Alexander*,

---

have been filed on September 12, 2013. *See id.*; *Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005).

382 F.3d at 1217. Plaintiff points to no corresponding authority for the proposition that tolling is required under Oklahoma law during exhaustion of administrative remedies.

Further, even assuming the statute of limitations was tolled while Plaintiff pursued administrative relief, the grievance documentation attached to his Complaint reflects that Plaintiff filed the relevant Grievance Appeal in June 2011 and that he received his rejection of this Appeal on or about July 6, 2011. *See* Compl. Ex. 1, at 15-17. Even allowing for tolling until Plaintiff received this rejection, he still would have been required to bring his § 1983 conspiracy claim within two years of that date, or no later than July 6, 2013, which he did not do. *See id.*; *McCarty*, 646 F.3d at 1289; *see, e.g.*, *Smith v. Ortiz*, No. 05-1211, 2006 WL 620871, at *5 (10th Cir. Mar. 14, 2006).

Next, Plaintiff argues that he is entitled to equitable tolling of any time-barred claims. *See* Pl.'s Resp. at 9-10.

> Under Oklahoma law, equitable tolling is appropriate when: (1) there is a legal disability because the plaintiff's competency is impaired or the plaintiff has not yet reached the age of majority; or (2) when defendants engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights. This court has also noted that "exceptional circumstances" may justify equitable tolling.

*Breedlove v. Costner*, 405 F. App'x 338, 342 (10th Cir. 2010) (internal quotation marks omitted) (citing *Young v. Davis*, 554 F.3d 1254, 1258 (10th Cir. 2009); *Alexander*, 382 F.3d at 1217). The allegations of Plaintiff's Complaint "do not fit within any of these circumstances." *Young*, 554 F.3d at 1258. Plaintiff does not claim he was under a "legal disability," and the Tenth Circuit has rejected the argument that incarceration amounts to a "legal disability" for purposes of tolling the statute of limitations under Oklahoma law.

*See Heuston v. Ballard*, 578 F. App'x 791, 792-93 (10th Cir. 2014) (noting that Oklahoma recognizes "legal disability" only for plaintiffs "whose competency is impaired or who have not reached the age of majority"); Compl. at 3-4, 8-9; Pl.'s Resp. at 9-13; *cf. McCoy v. Damron*, 9 F. App'x 994, 996 (10th Cir. 2001) ("In Oklahoma, exceptions to statutes of limitations are strictly construed *and are not enlarged on consideration of apparent hardship or inconvenience*. Further, it is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." (alteration, citation, and internal quotation marks omitted)).

As for "false, fraudulent, or misleading conduct calculated to lull [Plaintiff] into sitting on [his] rights," *Alexander*, 382 F.3d at 1217 (internal quotation marks omitted), Plaintiff contends that Defendants engaged in such conduct but, in support, points only to the improper and "misleading" rejection of his June 2011 Grievance Appeal by ODOC's Chief Medical Officer (or "CMO") on the stated basis that Plaintiff had not submitted the appeal to the ODOC Director. *See* Pl.'s Resp. at 10; Compl. Ex. 1, at 17. The suggestion that this rejected appeal caused Plaintiff to sit on his rights is facially implausible and, further, is inconsistent with Plaintiff's allegations, in this and in a previous case of which the undersigned takes judicial notice, showing that prior to the two-year period preceding the filing of this lawsuit Plaintiff believed the halal-diet policy in place at LCF was unconstitutional and "pseudo-" and was actively asserting his rights in that regard. *See* Compl. at 9; Compl. Ex. 1, at 12, 13; *Miller*, No. CIV-08-1371-F (Doc. Nos. 102, 105, 107) (Plaintiff prosecuting prior civil rights action, including from May to July 2011); *Morton*, 528 F. App'x at 842, 843 (noting that allegations raised by Plaintiff during the

*Miller* litigation regarding "the suitability" and "adequacy" of ODOC's new halal-meal policy were "qualitatively different" than the issue of outright denial of a religious diet; explaining that "[b]efore challenging the adequacy of the new halal-meal policy through litigation, Mr. AlAmiin must exhaust his administrative remedies").[7]

For all of these reasons, Plaintiff has not shown that he is entitled to equitable tolling of his § 1983 conspiracy claim against Defendants Jones and Enchassi. *See Breedlove*, 405 F. App'x at 342; *Alexander*, 382 F.3d at 1219-20.

### c. Continuing Violation

Finally, Plaintiff asserts that the "continuing violation" doctrine should apply and that because the injury of being subjected to a pseudo-halal diet has "accrue[d] continuously," his claims should not be time-barred. *See* Pl.'s Resp. at 10-11.

> The continuing violation theory is a creation of federal law that arose in Title VII cases and recognizes that certain violations are continuing in nature and provides that a claim asserting such a violation is timely if administrative charges are filed within the period applicable to the last act in the continuing series. To establish a continuing violation, a plaintiff must show that the claimed discriminatory acts that occurred outside the limitations period were sufficiently related to at least one act occurring within the relevant filing period, thereby constituting a continuing pattern of discrimination.

*Frazier v. Jordan*, No. 06-1333, 2007 WL 60883, at *4 (10th Cir. Jan. 10, 2007) (citation and internal quotation marks omitted).

---

[7] Nor does the record reflect any basis for equitable tolling under federal law (assuming its availability). *See Mondragón v. Thompson*, 519 F.3d 519 F.3d 1078, 1082 (10th Cir. 2008) (noting that federal law might allow equitable tolling "in rare circumstances" (citing *Wallace v. Kato*, 549 U.S. 384, 395-96 (2007))).

The Tenth Circuit has declined to determine in a published case whether the continuing violation doctrine applies in § 1983 actions. *Fogle v. Slack*, 419 F. App'x 860, 864 (10th Cir. 2011); *Hunt*, 17 F.3d at 1266. In an unpublished decision, however, the Tenth Circuit stated that "the doctrine of continuing violations does not apply to § 1983 claims." *Mercer-Smith v. N.M. Children, Youth & Families Dep't*, 416 F. App'x 704, 712 (10th Cir. 2011) (citing *Hunt*, 17 F.3d at 1265-66); *see also Burkley v. Corr. Healthcare Mngt. of Okla., Inc.*, 141 F. App'x 714, 716 & n.2 (10th Cir. 2005).

Even if this Court were to decline to follow *Mercer-Smith* and apply the continuing violation doctrine, it would not render Plaintiff's conspiracy claim timely filed. "The continuing violations doctrine is triggered by continual unlawful acts, not by continual ill effects from the original violation." *Frazier*, 2007 WL 60883, at *4 (citing *Bergman v. United States*, 751 F.2d 314 (10th Cir. 1984)). As detailed above, Plaintiff's Complaint establishes that on June 1, 2011, at the latest, he had a "complete and present" cause of action against Defendants Jones and Enchassi for conspiracy to establish the allegedly improper diet policy. *See* Compl. at 3-4, 8-9; Compl. Ex. 1, at 13; *Wallace*, 549 U.S. at 388. Plaintiff alleges no further unlawful acts pursuant to any agreement between Defendant Jones and Defendant Enchassi "within the two-year statutory period preceding his complaint," *Frazier*, 2007 WL 60883, at *4.[8] To subscribe to Plaintiff's theory, and allow a conspiracy claim to proceed against Defendants Jones and Enchassi on the basis

---

[8] As addressed further below, Plaintiff does allege that that certain Defendants committed separate and distinct violations of Plaintiff's rights during this two-year period with respect to the halal meals he received at LCF. *See* Compl. at 5, 9.

of only subsequent ill effects, "would, in practical effect, mean that the two-year statute would never run." *Bergman*, 751 F.2d at 317.

The continuing violation doctrine "cannot be employed where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 751-52 (10th Cir. 2014) (internal quotation marks omitted). "[W]hat matters for statute of limitations purposes is the date on which the conspiracy claim accrued"—i.e., the date that a plaintiff "knows or should know that his or her constitutional rights have been violated." *Hunt*, 17 F.3d at 1266; *Smith*, 149 F.3d at 1154 (internal quotation marks omitted). Because Defendants Jones and Enchassi's alleged conspiracy "f[e]ll outside the statutory period," as did Plaintiff's knowledge of the injury incurred therefrom, and was distinct from the improper acts allegedly taken within the two-year time period, "the continuing violation doctrine is inapplicable" to this aspect of Count One. *Frazier*, 2007 WL 60883, at *4.

### d. Conclusion

Because Plaintiff's own allegations reflect that he knew about the facts giving rise to his "pseudo-halal diet" conspiracy claim against Defendants Jones and Enchassi no later than June 1, 2011, and that no grounds for statutory or equitable tolling or application of the continuing violation doctrine exist in this case, this aspect of Count One is time-barred and should be dismissed with prejudice.[9] *See Young*, 554 F.3d at

---

[9] The ODOC and LCF Defendants further argue that *any* claim arising prior to September 2011 should be dismissed as barred by the two-year statute of limitations. *See* ODOC Defs.' Mot. at 14-15; LCF Defs.' Mot. at 25-26. But with the exception of the "pseudo-

1256, 1258; *Pemberton*, 2015 WL 1638638, at *4, *16-18.  Because this is the only claim of the Complaint asserted against or reasonably implicating Defendant Enchassi, Defendant Enchassi is entitled to be dismissed from this lawsuit.

### 2.  Other Conspiracy Allegations in Count One

In his Complaint, Plaintiff further alleges that when Defendant Caldwell received Grievance No. 11-316, in which Plaintiff complained about the LCF halal-diet policy, Defendant Caldwell "cho[se] to conspire with [Defendants] Jones and Morton to continue the violation and the substantial burden it places on [P]laintiff or change his belief/religion."  Compl. at 9; *see also id.* at 4-5.  Plaintiff also alleges that Defendants Morton, Jones, and McCoy "conspired to continue the unconstitutional policy and practice to deny" Plaintiff his religious diet "by their agreed joint ingenuity" in rejecting Plaintiff's appeal of the denial of Grievance No. 11-316.  *Id.* at 5, 9.

To plausibly state a conspiracy claim upon which relief may be granted under § 1983, a plaintiff must first "allege specific facts showing agreement and concerted action among" the defendants.  *Hunt*, 17 F.3d at 1266.  "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  *Id.* (internal quotation marks omitted).  While Plaintiff's allegations *conclude* there were agreements among Defendants Jones, Caldwell, Morton, and McCoy, Plaintiff has alleged no "specific facts" to plausibly *show* any such agreement, or any concerted action, as required to establish that a conspiracy

---

halal diet" conspiracy claim discussed above, these Defendants do not adequately support their argument through reference to Plaintiff's relevant allegations and corresponding legal claims.  This aspect of ODOC and LCF Defendants' Motions should be denied.

existed. *Id.*; *see, e.g.*, *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (1998). "[A] federal conspiracy action . . . requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010).

In addition to alleging well-pled facts showing an agreement, Plaintiff also must allege "an actual deprivation of a right 'secured by the Constitution and laws.'" *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990) (quoting 42 U.S.C. § 1983). Plaintiff has not adequately alleged that action taken in furtherance of such an agreement resulted in an "actual deprivation" of Plaintiff's federal rights by any Defendant. Plaintiff recites improprieties in the handling of his administrative grievances, but such improprieties would not have been the reason Plaintiff received allegedly improper halal meals at LCF, which is the act upon which his First Amendment and RLUIPA claims are based. And Plaintiff cannot show a deprivation of his rights based solely upon Defendants' alleged mishandling of his administrative grievances, as "there is no independent constitutional right to state administrative grievance procedures." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Brewer v. Gilroy*, 625 F. App'x 827, 838 (10th Cir. 2015) (holding that the plaintiff had "no independent due process rights" arising from prison employees' disposition of internal grievances). Plaintiff's allegation that certain Defendants have improperly denied or rejected his grievances therefore fails to demonstrate that the action allegedly taken in furtherance of

the "conspiracy" actually resulted in a deprivation of Plaintiff's rights.  *See* Compl. at 9; *Hunt*, 17 F.3d at 1266; *Dixon*, 898 F.2d at 1449.

Accordingly, Plaintiff's claim of a conspiracy among Defendants Caldwell, Jones, Morton, and McCoy should be dismissed without prejudice in its entirety for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6); *Hunt*, 17 F.3d at 1266; *Dixon*, 898 F.2d at 1449; *see, e.g.*, *Kirby v. Dall. Cnty. Adult Probation Dep't*, 359 F. App'x 27, 33-34 (10th Cir. 2009) (affirming dismissal of conspiracy claim against unknown employees of detention center under Rule 12(b)(6) and explaining that "the liberal pleading standard under the federal rules 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions'" (quoting *Iqbal*, 556 U.S. at 678-79)).

### 3.  Retaliation Allegations in Count One

Plaintiff next alleges that the actions taken by Defendants Jones, Morton, and McCoy in rejecting a grievance appeal based upon its alleged misdirection to one ODOC office instead of another in June 2011, and in failing to respond to two Requests to Staff that followed the next month, constituted "retaliation measures," designed "to punish" Plaintiff for exercising his religious beliefs and to "force him to change his beliefs, religion or starve."  Compl. at 5, 9.

"[P]risoners have a right to free exercise of religion," and "'prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights.'"  *Beierle v. Zavares*, Nos. 99-1383, -1530, 2000 WL 757725, at *5 (10th Cir. June 12, 2000) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.

1998)); *accord Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "This principle

applies even where the action taken in retaliation would be otherwise permissible."

*Smith*, 899 F.2d at 948.

> Government retaliation against a plaintiff for exercising his or her First
> Amendment rights may be shown by proving the following elements: (1)
> that the plaintiff was engaged in constitutionally protected activity; (2) that
> the defendant's actions caused the plaintiff to suffer an injury that would
> chill a person of ordinary firmness from continuing to engage in that
> activity; and (3) that the defendant's adverse action was substantially
> motivated as a response to the plaintiff's exercise of constitutionally
> protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007); *accord Gee v. Pacheco*,

627 F.3d 1178, 1189 (10th Cir. 2010).

In reviewing a prisoner's claim of retaliation, however, "it is not the role of the

federal judiciary to scrutinize and interfere with the daily operations of a state prison."

*Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citing *Turner v. Safley*, 482

U.S. 78 (1987)). Thus, to prevail on a retaliation claim, a prisoner must ultimately show

that the challenged actions would not have occurred "but for" a retaliatory motive. *Id.*;

*see also Brown v. Wyo. Dep't of Corr. State Penitentiary Warden*, 234 F. App'x 874,

877-78 (10th Cir. 2007) ("[A] prisoner claiming retaliation must allege specific facts

showing retaliation [on account] of the exercise of the prisoner's constitutional rights,

and he must prove that 'but for' the retaliatory motive, the incidents to which he refers,

including the disciplinary action, would not have taken place." (second alteration in

original) (citation and internal quotation marks omitted)).

Liberally construed, Plaintiff alleges the following acts were retaliatory: (i) on July 6, 2011, a Grievance Appeal was improperly rejected by Defendant McCoy on the basis of having been sent to ODOC's CMO rather than to its Director; and (ii) the Director's office (Defendants Jones and Morton) and the CMO's office (Defendant McCoy) both rejected Plaintiff's attempts to seek further relief through Requests to Staff submitted on July 12, 2011. In the original grievance and grievance appeal, Plaintiff objected that he was "being denied a halaal diet" because the so-called halal diet offered at LCF was just the vegetarian diet supplemented with "halaal ground beef when the standard meal calls for it"—i.e., the available halal diet did not conform to Plaintiff's sincerely held religious belief that "all foods and food items" in his diet must be certified halal. *See* Compl. Ex. 1, at 13, 15-16. Thus, Plaintiff asserts that these grievance-process rejections amounted to unconstitutional retaliation for Plaintiff exercising his right to practice his religion. *See* Compl. at 5, 9; Pl.'s Aff. at 2.

Plaintiff's pleading fails to plausibly allege the second required element of a retaliation claim—i.e., that he has suffered an injury "that would chill a person of ordinary firmness from continuing to engage in that activity." *Gee*, 627 F.3d at 1189 (internal quotation marks omitted). Even accepting Plaintiff's factual allegations as true and the documents incorporated into his pleading as accurate, the rejection of a grievance appeal and the failure of the Administrative Review Authority to respond to Requests to Staff are not sufficient circumstances to "chill a person of ordinary firmness" from continuing to exercise the right to practice his or her religion (or to pursue administrative

or legal relief).  *Shero*, 510 F.3d at 1203.[10]  "In run-of-the-mill cases bureaucratic bungling and delay, even if intentional, would not amount to retaliation."  *Green v. Snyder*, 525 F. App'x 726, 730 (10th Cir. 2013) (concluding that a prison official's "failure to provide . . . grievance forms in a timely fashion would not chill a person of ordinary firmness from continuing to file grievances"); *see also Shero*, 510 F.3d at 1203 (noting that "a trivial or de minimis injury will not support" a retaliation claim). *Compare* Compl. at 5, 9, *with Miskovsky v. Jones*, 437 F. App'x 707, 713 (10th Cir. 2011) (holding that transfer to more dangerous prison would chill prisoner from pursuing civil litigation), *and Tennyson v. Carpenter*, 558 F. App'x 813, 819 (10th Cir. 2014) (finding that allegation of suspension from prison choir on pretextual basis, which suspended prisoner's ability to exercise his sincerely held religious beliefs, was sufficiently chilling).

Because the acts of retaliation alleged by Plaintiff—rejections of a grievance appeal and of two Requests to Staff—would not, without more, "chill a person of ordinary firmness" from practicing his or her religion (or pursuing administrative or legal relief), the retaliation claim that is brought within Count One should be dismissed without

_____

[10] Although the "chill" standard is objective, not subjective, it is worth noting that the cited acts did not personally deter Plaintiff: Plaintiff continued to be supplied with the facility's halal diet, and Plaintiff submitted at least two more Requests to Staff to Defendant Jones and Defendant McCoy.  *See* Compl. at 5, 6, 9, 11, 14-15.

prejudice under Federal Rule of Civil Procedure 12(b)(6). *Frazier v. Dubois*, 922 F.2d

560, 562 n.1 (10th Cir. 1990); *Shero*, 510 F.3d at 1203.[11]

### B. Defendants' Motions for Summary Judgment

In the remainder of Count One, Plaintiff alleges that Defendants Jones, McCoy,

Morton, Caldwell, and Fennell violated the First Amendment and RLUIPA by failing to

provide Plaintiff with a proper and nutritious halal diet at LCF. *See* Compl. at 9, 11, 14-

15. The undersigned addresses ODOC Defendants' and the relevant LCF Defendants'

arguments for summary judgment with respect to this claim.

Summary judgment is a means of testing in advance of trial whether the available

evidence would permit a reasonable jury to find in favor of the party asserting a claim.

The Court must grant summary judgment when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). When considering a motion for summary judgment, the Court views the evidence

and any reasonable inferences drawn from the record in the light most favorable to the

---

[11] Nor has Plaintiff shown any plausible violation of due process or his right to access the courts based upon ODOC Defendants' alleged improprieties with his grievance submissions. Inmates do not have a protected liberty interest in pursuing formal grievance procedures": "[w]hen the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Spry v. McKune*, 479 F. App'x 180, 181 (10th Cir. 2012) (affirming district court's dismissal of due process claim premised upon unavailability of administrative remedy for failure to state a claim upon which relief may be granted); *Boyd*, 443 F. App'x at 332 (alteration and internal quotation marks omitted) (affirming district court's § 1915A dismissal of access-to-courts claim premised upon unavailability of administrative remedies); *see also Pemberton*, 2015 WL 1638638, at *24.

nonmoving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a genuine question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the existence or nonexistence of a disputed material fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

A defendant seeking summary judgment on the basis of an affirmative defense must show that the undisputed material facts establish all of the elements of the defense. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("The defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more

elements of the affirmative defense, absent which summary judgment must be granted in favor of the defendant. *Id.*

When assessing Defendants' Motions for summary judgment purposes, the undersigned has treated the factual allegations of Plaintiff's sworn filings (e.g., Plaintiff's Complaint and Response and affidavits attached thereto), Defendants' sworn affidavits, and those of the sworn Special Report, as affidavit evidence to the extent facts are alleged therein based on personal knowledge. *See Hall*, 935 F.2d at 1111; Fed. R. Civ. P. 56(c)(4).

### 1. Exhaustion of Administrative Remedies

All Defendants seek summary judgment on the basis of their affirmative defense that Plaintiff's claims in Count One are barred because Plaintiff did not, prior to commencing this lawsuit, exhaust his available administrative remedies as required by the PLRA. *See* LCF Defs.' Mot. at 9-12; ODOC Defs.' Mot. at 16-20, 23-31; 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 219-20 (2007) ("All [courts] agree that no unexhausted claim may be considered."). Defendants must establish this defense by showing that "administrative remedies were, in fact, available" to Plaintiff when his claim arose and that Plaintiff "failed to exhaust these remedies." *Purkey v. CCA Det'n Ctr.*, 263 F. App'x 723, 726 (10th Cir. 2008). If Defendants make that showing, the burden shifts to Plaintiff to show a genuine dispute over whether "an administrative remedy, although officially on the books, [was] not capable of use to obtain relief." *Ross v. Blake*, 136 S. Ct. 1850, 1853 (2016); *see also Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Little v. Jones*, 607 F.3d 1245, 1249-50 (10th Cir. 2010).

*a. The PLRA*

The PLRA provides that no action under 42 U.S.C. § 1983 "or any other Federal law" may be brought by a prisoner regarding conditions of confinement "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006) (explaining that § 1997e(a) requires "proper exhaustion"—i.e., "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (internal quotation marks omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90-91.

*b. The Oklahoma Department of Corrections Grievance Process*

ODOC has adopted an offender Grievance Process, Operations Memorandum OP-090124, through which a prisoner in its custody at any prison facility may seek administrative decisions or answers to complaints. *See generally* OP-090124 (eff. May 24, 2011) (Suppl. to S.R. Ex. 2, at 24-44 (Doc. No. 66-2, at 24-44)).[12] The ODOC Grievance Process requires an inmate initially to attempt informal resolution of his or her complaint by speaking to an appropriate staff member within three days of the relevant

---

[12] The ODOC Grievance Process is occasionally updated, with the prior version superseded when the new version takes effect. ODOC Defendants have supplied multiple versions in the Supplement to the Special Report, *see* Suppl. to S.R. Ex. 2. References herein are to the version of OP-090124 that took effect on May 24, 2011.

incident. *Id.* § IV(A). If the inmate is dissatisfied after this initial attempt, then he or she may submit a written "Request to Staff" within seven days of the incident. *Id.* § IV(B). This first informal level may be bypassed only if the complaint involves a sensitive topic or an emergency. *Id.* § VIII(A).

The next level of the ODOC Grievance Process is the filing of a formal grievance. If dissatisfied with the response received from a Request to Staff, the inmate may file a grievance within fifteen days of the incident or of the date of the response to the Request to Staff, whichever is later. *Id.* § V(A)(1). The grievance is submitted to the facility's Reviewing Authority, defined as the "facility head or facility correctional health services administrator" ("CHSA"). *Id.* §§ I(D), V(B)(1). This level may be bypassed only if the grievance involves a sensitive topic concerning the Reviewing Authority or CHSA. *Id.* § VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of a grievance appeal. If dissatisfied with the response to a grievance, the inmate may file a grievance appeal within fifteen days of the date of that response. *Id.* § VII(A), (B). The grievance appeal is submitted to the Administrative Review Authority ("ARA"), defined as: the ODOC Director, the ODOC Chief Medical Officer ("CMO"), or their designee. *Id.* §§ I(E), VII(B). A grievance appeal may be filed only upon the following grounds: (1) newly discovered/available evidence not considered by the Reviewing Authority; or (2) probable error committed by the Reviewing Authority such as would be grounds for reversal. *Id.* § VII(A). The ruling of the ARA is final and concludes the administrative remedy procedures available through ODOC. *Id.* § VII(D)(1).

*c. Plaintiff's Efforts to Exhaust Administrative Remedies*

The undisputed factual record demonstrates that Plaintiff submitted multiple documents to LCF and ODOC officials that requested relief on the fundamental dissatisfaction underlying Count One: that Defendants failed to provide Plaintiff with a proper and nutritious halal diet at LCF. *See* Compl. Ex. 1 (Doc. No. 1-1) at 12-24, 33-69; Doc. No. 97; Pl.'s Resp. Exs. 1, 2, 3 (Doc. Nos. 98-1, -2, -3); S.R. Exs. 6, 9, 13 (Doc. Nos. 59-6, 56-9, 59-13); Suppl. to S.R. Ex. 1 (Doc. No. 66-1).[13]

On May 12, 2011, Plaintiff submitted a Request to Staff requesting an explanation of the LCF halal-diet policy. *See* S.R. Ex. 6, at 1. In response, Plaintiff was informed that the LCF policy would not offer prepackaged meals, that when a meal called for ground beef then halal-certified ground beef would be substituted, and "all other meals will consist of vegetarian diet or alternative proteins." *Id.* Not satisfied, Plaintiff submitted Grievance No. 11-316 (dated June 1, 2011), complaining that he was being denied a halal diet in violation of his constitutional rights and RLUIPA and requesting

---

[13] In his Response, Plaintiff generally objects that Defendants' exhibits are not "competent evidence" because they are not authenticated or certified. *See* Pl.'s Resp. at 2, 22, 25. Plaintiff does not specifically dispute the authenticity or accuracy of any of the exhaustion-related documentation provided by Defendants, however. Further, the undersigned's recommendation is based upon evidence that is submitted by Plaintiff himself, publicly available, or included in the Special Report and its Supplement. The Special Report is accompanied by an affidavit in which LCF Warden Hector Rios swears that the contents of the Special Report are true and correct to the best of his knowledge and belief. *See* Doc. Nos. 61-1, 62. And "Plaintiff has not presented any evidence to show that any documents relied on in the [Special] Report are not authentic." *AlAmiin v. Miller*, No. CIV-08-1371-F, 2010 WL 3604660, at *1 (W.D. Okla. Sept. 9, 2010) (rejecting objection to Report and Recommendation based on lack of authenticated documents or evidence).

that he "have a complete, all food items to be, halaal certified diet." *Id.* at 2-3. The Reviewing Authority issued a formal Grievance Response to Plaintiff's Grievance No. 11-316, repeating the RTS response's characterization of the LCF halal-diet policy and stating that "[p]er OP-070202 Attachment B *Meal Preparation and Serving* [t]he [ODOC-]approved diet menu will be used for determining meal items for the Halal diet/meal." *Id.* at 4 (stating "Relief Granted").

Plaintiff appealed this Grievance Response. *See id.* at 5-6. On July 6, 2011, Plaintiff's Grievance Appeal was returned unanswered by Medical Services Administrator Defendant McCoy—i.e., the CMO's office—with the following explanation: "The nature of your complaint involves a condition of confinement and/or a religious issue, not a medical issue." *Id.* at 7; *see also* ODOC Defs.' Mot. at 23 (stating that "the ARA, through Genese McCoy, returned Plaintiff's Appeal unanswered").

On July 12, 2011, Plaintiff submitted a Request to Staff to ODOC Director Jones, asserting that he had addressed and mailed Grievance No. 11-316 to the ODOC Director but the submission had been redirected to the CMO. *See* S.R. Ex. 6, at 8. Plaintiff requested that the ODOC Director answer Grievance No. 11-316. *Id.* On that same day, Plaintiff also submitted a Request to Staff to the Medical Services Administrator, stating that he had mailed and addressed Grievance No. 11-316 "to the Director only" "[b]ut for reasons unknown" to Plaintiff the CMO had received and returned the Grievance. *Id.* at 9. Plaintiff requested that the CMO identify who had redirected the Grievance and transmit the Grievance back to the Director, to "whom it was originally sent." *Id.* The

record does not reflect that Plaintiff ever received any answer to or rejection of these Requests to Staff.

Several months later, on October 17, 2011, Plaintiff again submitted a Request to Staff to the Director and a Request to Staff to the CMO. *See id.* at 10, 11. Plaintiff requested from each official that his Request to Staff from July 12, 2011, be answered. *Id.* Plaintiff requested from the Director that he answer that RTS by answering Plaintiff's Grievance No. 11-316 "that was sent original[ly] to you on 6/6/11"; Plaintiff requested from the CMO that Grievance No. 11-316 be redirected to the ODOC Director. *Id.*

On October 21, 2011, the Director rejected Plaintiff's later Request to Staff, citing two reasons for returning the submission unanswered: (i) his appeal must be written on the proper appeal form; and (ii) the filing was submitted under the name Wahiid Alamiin, ODOC #200392, but Plaintiff "must utilize the name under which [he is] legally incarcerated: James Shockey." Suppl. to S.R. Ex. 1, at 12-15. The CMO likewise returned the later Request to Staff to Plaintiff unanswered, explaining that pursuant to OP-090124, a Request to Staff is an informal relief mechanism that precedes a formal request for relief and that cannot be submitted directly to the ARA. *See* S.R. Ex. 6, at 13; OP-090124 § I(E).

### d. Analysis

"[E]xhaustion is mandatory under the PLRA[,] and . . . unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The only claims that may be asserted validly in this action are those that were grieved properly under a procedure that was fully available to Plaintiff. *See Little*, 607 F.3d at 1250. As outlined above, in June 2011

Plaintiff received a Grievance Response on the merits of his Grievance No. 11-316 and then appealed that Response. This Grievance Appeal was returned unanswered by the CMO on July 6, 2011, because Plaintiff's complaint involved "a condition of confinement and/or a religious issue, not a medical issue." S.R. Ex. 6, at 7. The ODOC Grievance Process that was in effect at that time specifically defined "the administrative review authority" to include the ODOC Chief Medical Officer, as well as the ODOC Director or a designee from either office. OP-090124 § I(E). In other words, "ARA" was defined to be synonymous with *either* the CMO *or* the Director. Therefore the terms of the ODOC Grievance Process allowed submission of *any* kind of appeal to *any* entity that qualifies as the ARA (be it Director, CMO, or designee). *See id.* §§ I(E), VII(B).[14]

It follows that the CMO was not authorized to reject Plaintiff's Grievance Appeal on the basis of it being sent to (or received by) the CMO rather than the ODOC Director. While the ARA has the authority to return grievance appeals when not filed in accordance with OP-090124, *see id.* § VII(B)(1)(e), that policy only required an appeal to be sent to the "ARA or CMO," which Plaintiff's undisputedly was. *See id.* §§ I(E), VII(B); S.R. Ex. 6, at 5-7. ODOC Defendants concede as much while simultaneously

---

[14] The same ODOC Grievance Process also prescribed that a grievance appeal be made "to the administrative review authority *or* the chief medical officer, *whichever* is appropriate." *Id.* § VII(B) (emphasis added). This provision is inconsistent with those cited above expressly defining the ARA to include both the Director and the CMO and cannot be relied on to require action contrary to the cited provisions. *See id.* §§ I(E), VII(B); *cf. Blake*, 136 S. Ct. at 1859 ("[W]hen a remedy is . . . essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable.").

assuming the rejection of the Grievance Appeal was proper. *See* ODOC Defs.' Mot. at 23 ("On June 6, 2011, Plaintiff appealed Caldwell's #11-316 Grievance Response to the ARA for probable error. . . . . On July 6, 2011, *the ARA, through Genese McCoy*, returned Plaintiff's Appeal unanswered because relief from the diet could not be granted through medical services as his diet concerns were religious, and not medical, in nature." (emphasis added)).

Further, even construing section VII(B) to mean that an inmate is responsible for ensuring that a grievance appeal is sent to "whichever is appropriate" of the Director or the CMO, Plaintiff specifically avers under oath that he mailed his appeal to Director Jones rather than to the CMO. *See* Pl.'s Aff. at 2. Plaintiff additionally has presented an envelope, postmarked June 6, 2011, and addressed to "O.D.O.C. / Justin Jones," as evidence that he mailed this appeal to the ODOC Director. *See* Pl.'s Resp. at 30; Doc. No. 98-8, at 4. Defendants offer no evidence to counter Plaintiff's assertion and supporting evidence that his appeal was mailed directly to the Director.

Finally, the written rejection of Plaintiff's Grievance Appeal did not provide 30 days for resubmission, as required by OP-090124 when a grievance appeal is rejected for filing errors. *See* OP-090124 § VII(B)(1)(e) ("The [ARA] has the authority to return . . . grievance appeals unanswered when they . . . fail to be filed in accordance with this procedure. The offender will be given one opportunity to correct any errors, which must be received by the [ARA] within 30 days of the time the offender is notified of the improper filing."); S.R. Ex. 6, at 7.

For all of these reasons, Defendants have not shown that the CMO's rejection of Plaintiff's Grievance Appeal was authorized. "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little*, 607 F.3d at 1250 ("[T]he PLRA only requires the exhaustion of 'available' administrative remedies." (citing *Jernigan*, 304 F.3d at 1032)). Plaintiff's submission of Grievance No. 11-316 and his appeal to the ARA were adequate to exhaust administrative remedies for PLRA purposes. And Plaintiff's allegation in Grievance No. 11-316—that the LCF halal-diet policy denied him a proper halal diet and violated his constitutional rights—tracks his current legal claims of Count One and "sufficiently alert[ed] prison officials as to the nature of the alleged wrong" and provided "enough information" for officials to investigate and address the complaints raised by Plaintiff regarding the "pseudo-halal" diet provided by LCF. *See* S.R. Ex. 6, at 1, 2-3, 5-6; *Pfeil v. Lampert*, 603 F. App'x 665, 671 (10th Cir. 2015); *Davis v. Okla. Dep't of Corr.*, No. CIV-06-229-HE, 2007 WL 869650, at *10-11 (W.D. Okla. Mar. 20, 2007).

With respect to Count One, Defendants therefore have not met their burden to show that the undisputed material facts establish that Plaintiff failed to exhaust his administrative remedies as required by the PLRA. *See Hutchinson*, 105 F.3d at 564; *Purkey*, 263 F. App'x at 726. Defendants' Motions should be denied insofar as they request summary judgment on the basis of the affirmative defense of nonexhaustion.

2. <u>Defendants Caldwell's and Fennell's Arguments for Summary Judgment in Their Individual Capacities</u>

As noted, Plaintiff asserts pursuant to 42 U.S.C. § 1983 that he was denied "a lawful and correct" halal diet while housed at LCF, thereby preventing him from freely exercising his sincerely held religious beliefs in violation of the First Amendment. Compl. at 4-5, 9, 11, 14; Pl.'s Aff. at 1-2. Defendants Caldwell and Fennell, the LCF employees implicated on this claim, seek summary judgment, asserting that Plaintiff has not shown: (i) that these Defendants personally participated in any such violation; or (ii) a violation of Plaintiff's right to freely exercise his religion. *See* LCF Defs.' Mot. at 8-9, 13-14, 16-17. With respect to such arguments, these LCF Defendants bear the initial Rule 56 burden of demonstrating that the undisputed material facts require judgment as a matter of law in their favor. *See Celotex Corp.*, 477 U.S. at 322-23; Fed. R. Civ. P. 56(a), (c); *cf. Richardson v. McKnight*, 521 U.S. 399, 401 (1997) (holding that employees of a private prison are not "entitled to a qualified immunity from suit by prisoners charging a violation of 42 U.S.C. § 1983").

*a. Elements of Section 1983 Claim*

To succeed on a § 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States," and that the violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see* 42 U.S.C. § 1983; *Phillips v. Tiona*, 508 F. App'x 737, 750 (10th Cir. 2013) ("We have long assumed that employees of a private prison act under color of state law for purposes of § 1983 suits by inmates . . . ."). When a defendant is sued in his or her

individual capacity under § 1983, the plaintiff must show specific elements as to each defendant. First, the plaintiff must establish the defendant's "personal involvement or participation" in the alleged violation of a federal right. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *Iqbal*, 556 U.S. at 676; *see also Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Second, the plaintiff must establish a causal connection between the acts of that particular defendant and the violation of a federal right. *See Iqbal*, 556 U.S. at 676; *Pahls v. Thomas*, 718 F.3d 1210, 1225-26, 1228 (10th Cir. 2013). Finally, the plaintiff must establish that the defendant acted with the state of mind required for the underlying federal rights violation. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).

### b. Plaintiff's Claim

Plaintiff presents sworn allegations that the halal diet he is provided at LCF does not contain a sufficient quantity of meals that contain meat, although prepackaged certified-halal meat meals are available from LCF's vendor, and that this lack of meat-containing meals requires him either to engage in vegetarianism or to eat LCF's regular, non-halal meals, both of which violate Plaintiff's sincerely held religious beliefs. *See* Compl. at 4-5, 9, 14; Pl.'s Aff. at 6, 8. Plaintiff states that the halal diet he is provided does not include as many meals containing meat as do the kosher and general-population inmate diet plans. *See* Compl. at 4, 6, 11, 14; Pl.'s Aff. at 6, 8. Plaintiff further states that the halal diet he receives at LCF is not nutritional due to its insufficient calories and problems with certain food items provided by LCF Defendants, e.g.: 60% or more of the diet provided to Plaintiff is "bread and butter"; Plaintiff receives spoiled or damaged

oranges 20-25% of the time; Plaintiff receives bread that is not halal or kosher and is spoiled or damaged 50-60% of the time; Plaintiff receives milk that is not halal or kosher; and Plaintiff "is provided with two 10oz Halaal food trays daily" providing "only 500-600 total halaal calories, while the Koshers are provided with two trays 16oz-20oz totalling 1100 to 1400 calories daily" and a "variety of meat meals." *See* Compl. at 11, 14.

Plaintiff names Defendants Jones, McCoy, Morton, Caldwell, and Fennell in connection with this claim.[15] Specifically, Plaintiff states that Defendant Jones, in his position as ODOC's Director, was aware that the halal-diet policy would violate Plaintiff's constitutional right to a religious diet. *See id.* at 3-4. According to Plaintiff, LCF's halal-diet policy was enacted under the authority of Defendant Jones and "was not design[ed] for the sincerely held religious beliefs of [Plaintiff] and others requiring a correct and complete Halaal diet." *Id.* at 8; *see also id.* at 3-4 (alleging that Defendant Jones established a "pseudo-halaal policy" that would allow ODOC and LCF officials "to call anything halaal from the already completely non-halaal DOC main menu food plan"). Plaintiff states that Defendant Jones, along with Defendants McCoy, Morton, and Caldwell, "continue[d] the unconstitutional practice of denying [Plaintiff] a lawful and correct Halaal diet." *Id.* at 4, 9. Plaintiff contends that these Defendants engaged in such

---

[15] Plaintiff's claims against Defendant Jones, McCoy, and Morton are addressed separately in Section II.B.3.

practice through their denial, rejections, and failures to answer when Plaintiff sought administrative relief through the grievance process. *See id.* at 4-5, 9.

Plaintiff states that Defendants Caldwell and Fennell were "shown that there are beef, chicken, and lamb Halaal meals available" but have not provided Plaintiff "with either a nutritional or Halaal diet." *Id.* at 14. Plaintiff states that Defendants Caldwell and Fennell "verified" and "confirmed" to him that the halal-diet plan is not nutritional. Pl.'s Aff. at 6; *see also id.* at 2, 7-8; Compl. at 4-5, 6. Plaintiff further states that on October 30, 2012, Defendants Caldwell and Fennell "coerced" Plaintiff "to sign medical wa[iv]er to keep court ordered halaal diet." Compl. at 11; *see also* Pl.'s Aff. at 6. Plaintiff states that LCF's "halaal diet is nutrional[ly] inadequate," and, "to avoid being fe[]d incorrectly non-halaal medical diet [that Plaintiff] has seen is also non-nutritional," Plaintiff requested these two Defendants to add the available halal meat-containing meals to LCF's halal-diet plan. *See* Compl. at 14. Plaintiff states that when that he spoke with Defendants Caldwell and Gibson, "they asked for two weeks" but ultimately "never corrected the diet" or Defendant Fennell's actions with respect to the medical waiver. *See* Compl. at 6.

### c. Personal Participation of Defendants Caldwell and Fennell

Defendants Caldwell and Fennell move for summary judgment on Plaintiff's halal-diet claims due to Plaintiff's failure to adequately demonstrate their personal involvement or participation in the allegedly unconstitutional conduct. *See* LCF Defs.' Mot. at 13-14. Defendants' argument in this respect consists of a partial summary of Plaintiff's allegations against Defendant Caldwell and the following assertions: "A

review of the record shows that Defendant Caldwell responded to Plaintiff's grievance on 6/1/2011 advising that the [ODOC] policy regarding halal diets would be followed. Since January 2012 GEO adopted a new halal-diet plan. Plaintiff has presented no information that Defendant Caldwell was involved in the development of either halal meal plan." *Id.* at 14 (citing S.R. Ex. 6).

As a threshold matter, LCF Defendants offer no argument or evidence specific to Defendant Fennell and thus entirely fail to support the proposition that Defendant Fennell is entitled to summary judgment due to that Defendant's lack of personal participation in the alleged First Amendment violation. *See id.*; Fed. R. Civ. 56(a), (c)(1).

As to Defendant Caldwell, LCF Defendants' Motion addresses only the "development" of LCF's halal-diet plan and fails to show a lack of a genuine factual dispute regarding the other aspects of Plaintiff's claim. *Compare* LCF Defs.' Mot. at 14, *with* Compl. at 2, 4-5, 6, 7-8, 11, 14. Plaintiff alleges, and presents evidence through sworn statements, conduct extending beyond actions related to the administrative grievance process—e.g., that Defendant Caldwell and Defendant Fennell confirmed to Plaintiff that the halal diet being provided at LCF from September 2011-on was not nutritional due to inadequate meat,[16] knew that meat-containing, certified-halal meal

---

[16] *See* Compl. Ex. 1, at 59 (Defendant Caldwell responding to Plaintiff's September 2012 Request to Staff complaining about halal diet provided to Plaintiff); Pl.'s Aff. at 6 (Plaintiff averring Defendants Caldwell and Fennell have "verified" and "confirmed" to Plaintiff "that the halaal diet plan is not nutritional the way they designed it."); *see also id.* at 2, 7-8; Compl. at 4-5, 6.

options were available to LCF,[17] exercised and acknowledged control over whether such meals would be provided (including by requesting time to address Plaintiff's complaints), and did not provide those or other nutritionally adequate and halal meals to Plaintiff.[18] Plaintiff also alleges through sworn statements that in October 2012, in light of Plaintiff's need for a special medical diet, Defendant Caldwell and Defendant Fennell directed that the provision of halal meals to Plaintiff be stopped and Plaintiff be placed on another diet plan (elsewhere identified as LCF's "Diet for Health"), which is not halal, unless he signed a medical waiver. *See* Compl. at 11, 14. Specifically, Plaintiff alleges that, through this medical waiver, Defendants Caldwell and Fennell "forced Plaintiff to choose between the pseudo-halal meal plan they w[ere] offering . . . or access to medical care." *Id*. at 14; *see* S.R. Ex. 10 (Pl.'s Waiver of Treatment, Doc. No. 59-10); *see also* Compl. at 6, 11; Pl.'s Aff. at 6; Pl.'s Resp. at 30 ("Defendant Caldwell and Gibson . . . asked plaintiff for two weeks to fix the deficits. . . . . During defendant Fennell's visit with me [on October 30, 2012,] I asked her to correct the absen[c]e of other meat meals and [n]utritional inadequacies and she wanted two weeks also.").

---

[17] *See* Compl. at 14 (Plaintiff averring that Defendants Caldwell and Fennell "have been shown that there are beef, chicken, and lamb Halaal meals available" but have not provided Plaintiff "with either a nutritional or Halaal diet"); *see also id*. at 6.

[18] *See* Pl.'s Aff. at 6 (Plaintiff averring that he met with Defendant Caldwell in person on or about October 28, 2012, regarding halal diet); Pl.'s Resp. at 30; Compl. Ex. 1, at 60 (Plaintiff stating, in October 2012 Request to Staff, that at Oct. 28, 2012 meeting Defendant Caldwell verified that prepackaged halal meat meals are available); *accord* Compl. at 11; Pl.'s Aff. at 6; Pl.'s Resp. at 30 (Plaintiff averring, "During our visit on Oct. 28, 2012 in defendant Caldwell's office, he pulled up the J&M Food Inc. website that verified they could get all the meat meals" (citation omitted)).

Plaintiff's verified allegations and the evidence in the record sufficiently establish a genuine issue of material fact on the personal participation or involvement of Defendants Caldwell and Fennell that is required to hold them individually liable for the allegedly unlawful conduct. These Defendants thus are not entitled to judgment as a matter of law on the First Amendment aspect of Count One based upon Plaintiff's failure to allege and show such personal involvement or participation. *See* Fed. R. Civ. P. 56(a); *Grimsley*, 93 F.3d at 679; *Iqbal*, 556 U.S. at 676.

### d. Violation of First Amendment Right to Free Exercise

Defendants Caldwell and Fennell further assert that there is no genuine dispute of material fact as to whether Plaintiff's First Amendment right to freely exercise his religion was violated in connection with the diet provided him while at LCF. *See* LCF Defs.' Mot. at 20-24. Defendants present little evidentiary material in support of their contentions. Plaintiff, however, in addition to the sworn allegations set forth in his Complaint, presents declaratory and documentary evidence to show that the diet provided did not conform to his sincerely held religious beliefs. *See* Pl.'s Resp. and Exs.

"'[I]nmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (alteration and omission omitted) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). "[A]n inmate's right to free exercise of religion includes the right to a diet that conforms with [his or her] religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009). "In order to state a constitutional violation based on a free-exercise claim, a prisoner must allege that defendants

'substantially burdened his sincerely-held religious beliefs.'" *McKinley v. Maddox*, 493 F. App'x 928, 932 (10th Cir. 2012) (quoting *Gallagher*, 587 F.3d at 1070). "And he 'must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.'" *Id.* (quoting *Gallagher*, 587 F.3d at 1070); *see also Kay*, 500 F.3d at 1218.

If the prisoner-plaintiff satisfies this initial step, "prison-officials-defendants may identify the legitimate penological interests that justified the impinging conduct." *Kay*, 500 F.3d at 1218 (alterations and internal quotation marks omitted); *see also Turner*, 482 U.S. at 89 ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); *Beerheide v. Suthers*, 286 F.3d 1179, 1184-85 (10th Cir. 2002). The Court then balances factors set forth by the Supreme Court "to determine the reasonableness of the regulation." *Kay*, 500 F.3d at 1219 (listing the relevant factors). "The burden then returns to the prisoner to show that these articulated concerns were irrational." *Id.* at 1218 n.2 (internal quotation marks omitted); *accord Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." (discussing *Turner*, 482 U.S. at 89-91)).

"Consequently, the first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *Kay*, 500 F.3d at 1218 (internal quotation marks omitted). "[A] prisoner's belief in religious dietary practices is constitutionally protected if the belief is genuine and sincere, even if such dietary practices are not doctrinally required by the prisoner's

religion." *Id.* at 1220 (internal quotation marks omitted). Here, Plaintiff has stated, through sworn allegations in his pleading, that his sincerely held religious beliefs require him to receive a nonvegetarian, properly prepared, and nutritious halal diet that includes an adequate amount of meat-containing meals and calories. *See* Compl. at 4, 6, 9, 14-15. No Defendant disputes the sincerity of Plaintiff's religious belief as to his primary contention in this lawsuit—i.e., that a proper halal diet must include a sufficient quantity of halal meats—or otherwise. *See* LCF Defs.' Mot. at 13, 20-24; *see also* ODOC Defs.' Mot. at 31-34, 36; *cf. Kay*, 500 F.3d at 1219 ("The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, and therefore the issue of sincerity can rarely be determined on summary judgment." (omission and internal quotation marks omitted)).

A "substantial burden" on a plaintiff's sincerely held religious beliefs exists "'when a government prevents participation in conduct motivated by a sincerely held religious belief.'" *McKinley*, 493 F. App'x at 933 (omission omitted) (quoting *Abdulhaseeb*, 600 F.3d at 1315). Regarding a substantial burden on Plaintiff's access to a diet that conforms to his sincerely held religious beliefs and Defendants' interference with his rights, Plaintiff alleges that LCF Defendants have knowingly and intentionally failed to provide him with a proper and nutritional halal diet for more than two years and that he has been forced to choose between receiving his religious diet and (i) eating the improper halal diet or the general population diet, in violation of his religious beliefs, (ii) starving, or (iii) receiving a medically mandated diet or medical care. *See* Compl. at 4-6, 9, 11, 14; *Kay*, 500 F.3d at 1218; *McKinley*, 493 F. App'x at 932; *cf. Abdulhaseeb*, 600

F.3d at 1315 (explaining that religious exercise is substantially burdened under RLUIPA when the government (1) requires participation in an activity prohibited by the sincerely held religious belief, (2) prevents participation in conduct motivated by that belief, or (3) "places substantial pressure on an adherent" either not to engage in conduct motivated by that belief or to engage in conduct contrary to that belief). Plaintiff thus has adequately stated and pointed to supporting evidence for the allegation that these Defendants consciously or intentionally interfered with his free exercise rights by repeatedly denying him a proper halal diet and forcing him to decide between untenable choices. *See* Compl. at 4-6, 9, 11; Compl. Ex. 1 at 60; Pl.'s Waiver of Treatment at 1; *Abdulhaseeb*, 600 F.3d at 1315 (noting that a "substantial burden" may be found "where the government presents the plaintiff with a Hobson's choice—an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief").

LCF Defendants argue that Plaintiff's belief that the halal diet he receives at LCF is not proper or nutritious "is without merit." *See* LCF Defs.' Mot. at 22, 24. The Special Report avowed that LCF's halal diet (at least the version in effect since January 2012) offers between 2700 and 3400 calories per day, with one day's exception of 2400 calories. *See* S.R. at 4; S.R. Exs. 2 (Doc. No. 59-2), 5 (Doc. No. 59-5). Plaintiff has proffered contradictory evidence, however, supporting his contention that the halal food provided is inadequate and that he actually receives far fewer calories per day on LCF's halal diet than alleged by Defendants. *See* Compl. at 11; Pl.'s Resp. at 20; Pl.'s Resp. Exs. 12, 13. Plaintiff also has produced evidentiary material—including halal-vendor offerings, calorie calculations, and meal trays—supporting his claim that the meals he

receives do not supply the quantity of meats and calories that he maintains are necessary for him to exercise his right to safely practice his religion. *See, e.g.*, Pl.'s Aff. at 6, 8; Pl.'s Resp. at 20, 22; Pl.'s Resp. Exs. 11 (Doc. No. 98-11), 12 (Doc. No. 98-12), 13 (Doc. No. 98-13), 14 (Doc. No. 98-14), 15 (Doc. No. 98-15). Plaintiff also argues and presents evidence for the proposition that there are prepackaged halal meals containing meat available from LCF's vendor that would accommodate his right to a religious diet and alleviate the allegedly non-nutritional lack of meat and calories in the current LCF halal diet. *See* Compl. at 14; Pl.'s Resp. at 24, 30; Compl. Ex. 1, at 60; Pl.'s Resp. Ex. 11; *see also Kay*, 500 F.3d at 1218; *McKinley*, 493 F. App'x at 932. LCF Defendants have not challenged Plaintiff's proffered halal-vendor offerings, calorie calculations, or physical evidence (meal trays) on any grounds. *See* Doc. No. 103.

Plaintiff's allegations and evidence, considered in their entirety, are sufficient to show a genuine question of fact as to whether Defendants Caldwell and Fennell, by denying him a proper halal diet and forcing him to decide between untenable choices, consciously or intentionally interfered with Plaintiff's free exercise rights. *See McKinley*, 493 F. App'x at 933; *see also Gallagher*, 587 F.3d at 1070-71. Accordingly, Plaintiff has met his initial obligation to support his free exercise claim.

Defendants then are obligated to "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Kay*, 500 F.3d at 1218 (alterations in original) (internal quotation marks omitted); *see also McKinley*, 493 F. App'x at 932 (noting that "'[w]hat constitutes a 'reasonable opportunity'" for an inmate to pursue his or her sincerely held religious beliefs "'is determined in reference to legitimate penological

objectives.'" (quoting *Gallagher*, 587 F.3d at 1069)).   The Court must weigh several

factors (the "*Turner* factors") to determine "whether a prison regulation reasonably

curtails constitutional rights":

> (1) whether a rational connection exists between the prison policy
> regulation and a legitimate governmental interest advanced as its
> justification; (2) whether alternative means of exercising the right are
> available notwithstanding the policy or regulation; (3) what effect
> accommodating the exercise of the right would have on guards, other
> prisoners, and prison resources generally; and (4) whether ready, easy-to-
> implement alternatives exist that would accommodate the prisoner's rights.

*Beerheide*, 286 F.3d at 1185 (citing *Turner*, 482 U.S. at 89-91); *accord Boles v. Neet*, 486

F.3d 1177, 1181 (10th Cir. 2007) (noting that the inquiry "requires close examination of

the facts of each case, the specific regulation under review, and the alleged justifications

for it").

"To satisfy [the first] prong of the test, the prison administration is required to

make a minimal showing that a rational relationship exists between its policy and stated

goals." *Beerheide*, 286 F.3d at 1186.  Defendants Caldwell and Fennell fail to make even

this minimal showing.  LCF Defendants point to the "Master Diet Plan" implemented in

January 2012 as "reasonably related to legitimate penological interests such as security

and the orderly administration of the prison."  LCF Defs.' Mot. at 21-22 (citing Special

Report Exhibits 2, 3, 4, and 5 for proposition that "[t]he diet provided meets appropriate

religious standards and has been evaluated for nutritional value").  Defendants offer no

argument whatsoever as to the reasonableness of the pre-2012 halal-diet plan about which

Plaintiff also complains.  *See* Compl. at 3, 6; S.R. Ex. 6, at 4.  As to the January 2012

plan, Defendants rely only upon their counsel's briefing argument, and cite no evidence,

for the proposition that the facility's "security," "orderly administration," and "operating a simplified food service" were the relevant "stated goals" with respect to LCF's Master Diet Plan. LCF Defs.' Mot. at 22. But "[f]actual statements contained in defendants' brief attributable to counsel . . . do not constitute summary judgment evidence[.]" *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991); *see* Pl.'s Resp. at 28 ("Defendants have not offer[ed] any proof that costs are an issue."); *cf. Beerheide*, 286 F.3d at 1186 (finding first *Turner* factor weighed in defendants' favor when defendants proffered trial testimony regarding two penological interests that justified policy against providing kosher diet).

LCF Defendants also have not shown that the second *Turner* factor weighs in their favor. This factor requires the Court to examine "whether alternative means of exercising the right are available notwithstanding the policy or regulation." *Beerheide*, 486 F.3d at 1185. Defendants specifically address Plaintiff's contention that in October 2012 he was forced to choose between a special medical diet (the "Diet for Health") and the available halal diet, asserting:

> At LCF, Plaintiff is not required to adhere to the Diet for Health. It is recommended and Plaintiff may choose either the halal diet or the diet for health or in the alternative compare the two and eat comparable items from the halal diet [that] accommodate [Plaintiff's] medical needs.

LCF Defs.' Mot. at 23.[19]

---

[19] The record reflects that October 30, 2012, Plaintiff signed a Waiver of Treatment/Evaluation stating that Plaintiff had been advised that it was necessary for him to receive a Diet for Health, that such a diet was to be provided by LCF, that he had been informed that the risks of refusing included "worsening of symptoms," but that he was

This focus upon the Diet for Health adds nothing relevant as to disposition of the primary thrust of Plaintiff's First Amendment claim: that the general halal diet that is offered at LCF does not conform to Plaintiff's religious beliefs and substantially burdens those sincerely held beliefs. As to the specific question of whether a halal alternative to the Diet for Health was available, LCF Defendants cite no evidence to support the proposition that LCF's halal-diet plan includes "comparable items" to those on the Diet for Health or that Plaintiff knew which items he should choose for medical purposes. LCF Defendants cite no evidence to support their suggestion that the Diet for Health is an alternative means of "religious exercise" or a reasonable "alternative[] to following Islamic dietary laws," *AlAmiin v. Miller*, No. CIV-08-1371-F, 2010 WL 3603150, at *14-15 (W.D. Okla. June 28, 2010) (R. & R.), *adopted*, 2010 WL 3604660 (W.D. Okla. Sept. 9, 2010); *see also Beerheide*, 286 F.3d at 1186-89. And Plaintiff avers that the Diet for Health is "non-halaal" and "non-nutritional"—i.e., not a reasonable alternative method by which Plaintiff can exercise his religious beliefs—and Defendants have not specifically disputed either aspect of this assertion. *See* Compl. at 14; LCF Defs.' Mot. at 22-23; ODOC Defs.' Mot. at 31-34. The Court "cannot at this stage simply assume" that there

---

"refusing to submit to treatment at my own insistence and against the advice of the health care provider." Pl.'s Waiver of Treatment at 1. Plaintiff avers that he was "coerced" into signing the Waiver of Treatment and forced to choose between the halal diet and "access to medical care." Compl. at 11, 14; Pl.'s Resp. at 30 (contending that on October 30, 2012, Defendants Fennell and Caldwell conspired to stop Plaintiff's access to a halal diet unless he signed a medical waiver).

were "alternative means of satisfying Islamic law" available to Plaintiff. *See Miller*, 2010 WL 3603150, at *14-15.

Regarding the third *Turner* factor, the Court must examine "what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally." *Beerheide*, 286 F.3d at 1185. LCF Defendants' one-sentence argument on this point is nonresponsive and entirely fails to address accommodation. *See* LCF Defs.' Mot. at 23 ("Here, Plaintiff was provided a religious diet and given the alternative of a diet for health to address his medical needs."). Thus, these Defendants "have made no showing that there would be any impact upon guards or other inmates" or prison resources if Plaintiff's requests were accommodated. *See Miller*, 2010 WL 3603150, at *15; *Beerheide*, 286 F.3d at 1189 ("[W]hile *Turner* requires us to defer to the expertise of prison officials, that deference is not absolute. In order to warrant deference, prison officials *must present credible evidence* to support their stated penological goals.").

On the final *Turner* factor, the Court assesses "whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights." *Beerheide*, 286 F.3d at 1185. LCF Defendants argue that Plaintiff's suggestion that he be provided a diet that is both halal and meets his medical needs "is not reasonable in the penological setting." *See* LCF Defs.' Mot. at 23-24. These Defendants, however, cite no evidentiary material to support this assertion, including any assessment of how difficult or expensive it would be to provide the certified-halal meat meals Plaintiff references or how difficult or expensive it would be to provide a halal version of the Diet for Health. And, Plaintiff has

specifically disputed this contention by alleging under oath and presenting evidence that another inmate at LCF does receive a halal diet that accommodates his medical needs. *See* Pl.'s Resp. at 24 ("LCF is providing a medical approved J&M halaal diet to Tyrone Farris who is receiving the Chicken meat meals. . . . . Therefore LCF can offer a medical approved halaal diet if they choose to."); Pl.'s Resp. Ex. 16 (Doc. No. 98-16) (copies of labels reading "HALAL CHICKEN & NOODLES" with "FARRIS" handwritten thereon). "Although the prison authorities need not 'set up and [then] shoot down every conceivable alternative,' to satisfy the fourth *Turner* factor, they should certainly address the only alternative[s] suggested by Plaintiff." *Miller*, 2010 WL 3606150, at *15 (quoting *Turner*, 482 U.S. at 90); *cf. Beerheide*, 286 F.3d at 1190 (upholding district court's finding that it could not evaluate impact of suggested alternative on ODOC's budget where ODOC "failed to present reliable evidence that the cost impact would be more than *de minimis*").

In sum, upon consideration of the evidentiary material presented by the parties and application of the *Turner* factors in light of that record, "[t]here is enough question as to preclude a summary disposition of the claim" that the denial of a proper and nutritious halal diet has violated Plaintiff's First Amendment rights. *Miller*, 2010 WL 3603150, at *16. Because LCF Defendants have not shown they are entitled to summary judgment on this claim, their motion for summary judgment should be denied as to the First Amendment claim of Count One.

3. <u>ODOC Defendants' Arguments for Summary Judgment on the Basis of Qualified Immunity in Their Individual Capacities</u>

ODOC Defendants Jones, McCoy, and Morton likewise move for summary judgment on Plaintiff's individual-capacity First Amendment claims but do so within the context of their defense of qualified immunity. *See* ODOC Defs.' Mot. at 31-35, 39. The doctrine of qualified immunity shields government officials performing discretionary functions from personal liability if their conduct does not violate clearly established rights of which a reasonable government official would have known." *Graves v. Thomas,* 450 F.3d 1215, 1218 (10th Cir. 2006) (internal quotation marks omitted). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established" at that time. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). In determining whether the plaintiff has met this burden, the court views the facts in the light most favorable to the plaintiff as the nonmoving party and "resolve[s] all factual disputes and reasonable inferences" in the plaintiff's favor. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009); *Mata v. Saiz*, 427 F.3d 745, 750 (10th Cir. 2005). However, the "plaintiff's version of the facts must find support in the record" if he or she is to defeat a qualified-immunity defense at this stage of litigation. *Thomson*, 584 F.3d at 1313. If the plaintiff satisfies the two-part initial burden described above, then the defendant "bears the normal summary judgment burden of showing that no

material facts remain in dispute that would defeat the qualified immunity defense."
*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

### a. Defendants McCoy and Morton

In support of their assertion of qualified immunity, ODOC Defendants first argue that Plaintiff cannot establish their personal involvement or participation in the allegedly unconstitutional conduct as required to meet his burden to show that these Defendants violated his rights under the First Amendment. *See* ODOC Defs.' Mot. at 33-34. Defendants McCoy and Morton assert that they did not have the authority to adopt or change any relevant policy and that the specific conduct they allegedly engaged in— responding to grievance documents—does not link them personally to any unconstitutional acts suffered by Plaintiff at LCF. *See* ODOC Defs.' Mot. at 33. The undersigned agrees. Plaintiff has not established disputed facts from which it could reasonably be inferred that Defendants McCoy and Morton personally participated in the alleged violations of Plaintiff's rights.

Plaintiff argues that Defendant Morton "did get defendant McCoy to aid her" in preventing Plaintiff from pursuing Grievance No. 11-316 and that "Defendant McCoy with full knowledge" that Plaintiff's appeal of Grievance Appeal No. 11-316 was properly filed "did agree with defendant Morton to thwart/[]hinder[] Plaintiff's abilities to exhaust so that his right to grieve and to associate would be violated." Pl.'s Resp. at 30. The record reflects that in July 2011 Defendant McCoy returned Plaintiff's Grievance Appeal on the basis that it was misdirected to the CMO's office, and in October 2011 Defendant Morton rejected Plaintiff's follow-up Request to Staff (which

had been sent to Director Jones) because the submission was not on a proper appeal form and was submitted under the name Wahiid AlAmiin. S.R. Ex. 6, at 7; Suppl. to S.R. Ex. 1, at 13.

"[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher*, 587 F.3d at 1069 (citing *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009); *accord Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007)). Because Plaintiff has shown no relevant actions by Defendant McCoy or Morton beyond the denial of his grievances, the summary judgment record reflects no "'affirmative link' between these defendants and any alleged constitutional violation." *See Gallagher*, 587 F.3d at 1069 (dismissing § 1983 claims against defendants who were alleged only to have denied administrative grievances and not participated in underlying constitutional violation); *Stewart*, 701 F.3d at 1328 (affirming summary judgment to defendant on Free Exercise claim because "[w]hatever knowledge [the defendant] may have had when he denied the appeal, his only involvement was to deny the grievance appeal, which is insufficient for § 1983 liability"); *Escobar v. Reid*, No. CIV-09-2207, 2012 WL 426643, at *11 (D. Colo. Jan. 19, 2012) (R. & R.) ("Plaintiff's argument that actual knowledge was gained through review of Plaintiff's filed grievances is unavailing; this assertion simply suggests that the reviewing Defendant knew of Plaintiff's *allegations*, not that the Defendant had actual knowledge of an occurring violation."), *adopted*, 2012 WL 426695 (D. Colo. Feb. 10, 2012). Because Plaintiff cannot show that Defendants McCoy and Morton violated his First Amendment rights, these Defendants are entitled to summary

judgment on the basis of qualified immunity on this aspect of Plaintiff's Count One. *See* Fed. R. Civ. P. 56(c)(3), (e)(3); *Martinez*, 563 F.3d at 1088.

### b. Defendant Jones

With respect to Defendant Jones, the undersigned need not determine whether this litigant was personally involved or participated in the alleged First Amendment violation, because Plaintiff has not met his burden to show that the right asserted was "clearly established" at the relevant time, such that "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks omitted).

Plaintiff seeks to hold Defendant Jones individually liable on this claim based upon Jones' supervisory authority, in his role as ODOC Director, over the religious diets served at LCF, which houses Oklahoma state prisoners pursuant to a contract with ODOC.[20] Plaintiff states under oath that: the challenged "LCF halaal diet plan is based upon" ODOC policy (Pl.'s Resp. at 20); "Defendant Jones with full knowledge did give it authority of State enforcement to be applied against ODOC offenders in their custody and [its] contrac[]tors" (Pl.'s Resp. at 30); and Defendant Jones' failure to grant relief on

_____

[20] Plaintiff also seeks prospective injunctive relief against the ODOC Director in his official capacity, in the form of "complete nutritional and halaal meat meals" and not being "force[d] to practice different religious practice or customs (i.e.[,] vegetarianism)." Compl. at 16. Although ODOC Defendants assert that "Plaintiff's request for injuncti[ve] relief is improper," they do not explain this assertion or directly address Plaintiff's official-capacity halal-diet First Amendment claim and the standard applicable thereto. *See* ODOC Defs.' Mot. at 10, 15-16, 34. Absent an adequately supported basis for dismissal, Plaintiff's official-capacity First Amendment claim against Defendant Patton should remain at issue.

Requests to Staff submitted by Plaintiff in July and October 2011 was a "refus[al] to correct" "the illegal actions of himself and his staff . . . and refuse[al] to use his authority, being only he can change pol[ic]y" to correct other ODOC officials' and contractors' thwarting and hindering of Plaintiff's ability to administratively exhaust his halal diet complaints (Pl.'s Compl. at 9; Pl.'s Resp. at 30).[21]

In seeking summary judgment, ODOC Defendants assert that Plaintiff has failed to show "a clearly established" "constitutional right" during the relevant time period "based on facts comparable to the facts here." ODOC Defs.' Mot. at 33; *see also id.* at 31. While this briefing "was assuredly not robust," ODOC Defendants did therein present a qualified-immunity defense that "necessarily included the clearly-established law question." *Cox v. Glanz*, 800 F.3d 1231, 1244, 1245 (10th Cir. 2015) (emphasis omitted). Stated differently, "by asserting the qualified-immunity defense, [Defendant Jones] triggered a well-settled twofold burden that [Plaintiff] was compelled to shoulder: not

---

[21] Plaintiff also submits two affidavits by Jones that were filed in *Miller* as summary judgment exhibits. *See* Pl.'s Resp. Ex. 7, Jones Aff. (May 2, 2011) (Doc. No. 98-7), *filed as* Doc. No. 97-2 in *Miller*; Pl.'s Resp. Ex. 9, Jones Aff. (May 17, 2011) (Doc. No. 98-9), *filed as* Doc. No. 101-3 in *Miller*. In the first affidavit, Defendant Jones states under oath: that he is employed as the ODOC Director; "[t]hat ODOC procedures give effect to ODOC policies"; "[t]hat the director approves ODOC procedures"; and "[t]hat only the director may give effect to a change in ODOC policies via revision of ODOC procedures." Pl.'s Resp. Ex. 7, at 1. In the second affidavit, Defendant Jones states under oath: "As the Director of ODOC, I approve procedures and protocols, including revisions, amendments, addendums or exceptions to procedures and protocols."; "On May 2, 2011, I approved a new version of OP-030112 and an addendum to OP-070202 in order to ensure that Muslim inmates may receive meals prepared in accordance with halal requirements."; and "The changes made to ODOC procedures are intended to permanently provide halal meals to inmates in compliance with OP-030112." Pl.'s Resp. Ex. 9, at 1.

only did [he] need to rebut [Defendant Jones'] no-constitutional-violation arguments, but [he] also had to demonstrate that any constitutional violation was grounded in then-extant clearly established law." *Id.* at 1245; *accord Estate of Booker*, 745 F.3d at 411 (noting that at summary judgment, the court "*must grant* qualified immunity" unless the plaintiff can meet this two-part burden (emphasis added)).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stewart*, 701 F.3d at 1330 (internal quotation marks omitted); *accord Cox*, 800 F.3d at 1245. "[A] case directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. For a right to be clearly established there must be either controlling authority (i.e., an on-point Supreme Court or published Tenth Circuit decision) or "a robust consensus of cases of persuasive authority" from other courts that "ha[s] found the law to be as the plaintiff maintains." *al-Kidd*, 563 U.S. at 741-42 (internal quotation marks omitted); *Sanchez v. Labate*, 564 F. App'x 371, 373 (10th Cir. 2014) (internal quotation marks omitted).

It long has been established that "prisoners have a constitutional right to a diet conforming to their religious beliefs." *Beerheide*, 286 F.3d at 1185 (citing *LaFevers v. Saffle*, 936 F.2d 1117, 1119-20 (10th Cir. 1991)); *accord Gallagher*, 587 F.3d at 1070; *see also Stewart*, 701 F.3d at 1330 (noting that prisoners retain "a reasonable opportunity to pursue [their] religion" (internal quotation marks omitted)). *But see O'Lone*, 482 U.S. at 348 ("Lawful incarceration brings about the necessary withdrawal or limitation of

many privileges and rights, a retraction justified by the considerations underlying our penal system." (internal quotation marks omitted)).  Consequently, it has long been the case that a prisoner may obtain relief under the First Amendment when prison officials refuse to provide him with a diet that is religious in nature and thereby "improperly infringe upon [the prisoner's] right to observe" his religion (unless the infringement passes muster under *Turner*, as discussed above).  *See Beerheide*, 286 F.3d at 1185; *Stewart*, 701 F.3d at 1330-31; *see, e.g.*, *Beerheide*, 286 F.3d at 1185-92 (affirming district court's entry of injunction based upon finding that prison officials' failure to provide a kosher diet had violated First Amendment); *LaFevers*, 936 F.2d at 1117-20 (reversing dismissal of free exercise claim arising from refusal to provide inmate with vegetarian diet); *Patel v. United States*, No. 97-1083, 1997 WL 764570, at *1-2 (10th Cir. Dec. 4, 1997) (finding that the relevant right for an inmate's claimed denial of Hindu meals was clearly established as stated in *LaFevers*); *Miller*, 2010 WL 3603150, at *14 (defining, in Plaintiff's previous lawsuit challenging a complete "denial of a halal diet," the clearly established right at issue as the right stated in *Beerheide*).

But such a broad formulation of the right is far too general in this case.  In this lawsuit, Plaintiff does not allege that he has been denied altogether a halal religious diet or even that he has been denied halal meals containing meat.  To the contrary, Plaintiff alleges that he has available, and has received, a religious-diet option designated as halal that includes halal-meat meals.  Plaintiff's detailed and narrow allegations as to how his constitutional rights were violated in any way traceable to Defendant Jones—i.e., through (i) LCF failing to serve Plaintiff his *requested quantity* of outside-certified, meat-

containing halal meals, and (ii) Defendant Jones rejecting relevant administrative grievances—place his claim beyond the clearly established right described in *Beerheide* and *LaFevers.* *See* Compl. at 3-5, 6, 9, 11, 14; Pl.'s Aff. at 2, 7-8.[22]

The Supreme Court has admonished that district courts, when assessing clearly established law, may not define the relevant right too broadly. "[T]he right allegedly violated must be established, not as a broad general proposition, but in a particularized sense *so that the 'contours' of the right are clear to a reasonable official.*" *Reichle v. Houston*, 132 S. Ct. 2088, 2094 (2012) (emphasis added) (citations and internal quotation marks omitted).

> We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.

*al-Kidd*, 563 U.S. at 742 (citations omitted); *accord Reichle*, 132 S. Ct. at 2094 ("Here, the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause."). In *Stewart*, for example, the Tenth Circuit rejected the prisoner's argument that the constitutional right at issue was "the right to reasonably exercise one's religion in prison," instead upholding the district court's formulation of the right as one

---

[22] Plaintiff additionally alleges that his halal diet as improper in other ways—e.g., insufficient calories, spoiled food items—but places responsibility and discretion over these aspects upon the LCF Defendants rather than Defendant Jones. *See* Compl. at 11, 14; Pl.'s Aff. at 7, 8.

"to be free from having to cut one's hair for prison security reasons based on one's sincerely held religious beliefs." *See Stewart*, 701 F.3d at 1330.

Here, in contrast to cases involving an outright denial of a religious diet, Plaintiff specifically alleges that he is, in fact, receiving a diet that is separate from both the general-population and kosher diets and designed to accommodate the requirements of halal as some Muslims—though not Plaintiff—practice it. *See, e.g.*, Compl. at 3-4, 6, 8-9, 11, 14; *see also id.* at 3 (alleging that the ODOC halal-diet policy Plaintiff challenges now was enacted as a result of Plaintiff's previous lawsuit (in which he complained of the "flat denial" of a halal diet, *see Morton*, 528 F. App'x at 843)); Pl.'s Aff. at 1 (same). What is not clearly established, and was not clearly established in 2011 to 2013, is that the religious exercise of prisoners such as Plaintiff is "substantially burdened" by a corrections official's approval of a policy that authorizes a version of the relevant religious diet requested by a prisoner but does not provide for the particular version of this diet that is demanded by a particular prisoner's beliefs. Put differently, Plaintiff has not shown that clearly established law, extant in 2011 to 2013, would have been "'reasonable warning'" to an official in Defendant Jones' position that receipt of the "halal diet" outlined in ODOC policy, rather than the diet Plaintiff considered to be properly halal, "'violated [Plaintiff's] constitutional rights.'" *See Stewart*, 701 F.3d at 1331 (quoting *United States v. Lanier*, 520 U.S. 259, 269 (1997)).

As noted, Plaintiff submitted a comprehensive Response to Defendants' dispositive Motions, which included multiple citations to authority and exhibits. Plaintiff, however, "did virtually nothing to define the contours of" this clearly-

established-law question," upon which he ultimately carries the burden of proof in the qualified-immunity context. *Cox*, 800 F.3d at 1246. Plaintiff in his Response cites several cases that purport to show his claimed religious-diet right was clearly established, but none of these present facts "sufficiently analogous to satisfy the particularized context necessary to support liability." *Stewart*, 701 F.3d at 1331 (internal quotation marks omitted); *see* Pl.'s Resp. at 20, 25.

First, Plaintiff cites *Lovelace v. Lee*, 472 F.3d 174, 198-99 (4th Cir. 2006). In *Lovelace*, a Muslim prisoner claimed in relevant part that his First Amendment and RLUIPA rights were violated when he was barred from predawn and postsunset meals that would accommodate his daytime fasting for twenty-four of Ramadan's thirty days after a prison official falsely accused the prisoner of eating during the day. *See id.* at 181-82, 184-85. But Plaintiff's cited pages simply restate the proposition that a prisoner has a right "to a diet consistent with his religious scruples, including proper food during Ramadan," which, in *Lovelace*, is sufficiently specific and apposite because that plaintiff was alleging a total "deprivation[] of Ramadan meals" that "blocked his observance of Ramadan." *See id.* at 198-99 (omission omitted). Here, by contrast, Plaintiff affirmatively alleges that he has received a diet specifically designated for those seeking meals consistent with halal principles (although he objects to certain aspects of this diet).

Next, Plaintiff cites to *Goodvine v. Swiekatowski*, 594 F. Supp. 2d 1049, 1059 (W.D. Wis. 2009), but this case likewise does not assist him in meeting his burden. In *Goodvine*, a Muslim prisoner claimed that his request for a "fully halal" diet had been denied by prison officials and that he was not supplied with sandwiches at night to

accommodate his desire to fast every other day. *See id.* at 1055-56. Regarding his first request, the district court dismissed the prisoner's First Amendment claim on screening for failure to state a claim upon which relief could be granted, although the court did allow the plaintiff to seek relief for this denial under RLUIPA. *See id.* at 1059. Regarding the prisoner's second request, the district court found that the prisoner failed to state a claim under either the Free Exercise Clause or RLUIPA and likewise dismissed these claims on screening. *See id.* Nothing about this out-of-circuit district court case reasonably would put an official such as Defendant Jones on warning that the conduct alleged by Plaintiff violated a prisoner's free exercise rights. *See Stewart*, 701 F.3d at 1331; Compl. at 3-4, 5, 8-9, 11, 14; Pl.'s Aff. at 1-2.

Plaintiff also puts forth *Udey v. Kastner*, which predated *Turner* and *O'Lone*, as reasonably warning Defendant Jones that his conduct would violate Plaintiff's First Amendment rights. *See* Pl.'s Resp. at 25 (citing *Udey*, 805 F.2d 1218 (5th Cir. 1986)). In that case, a prisoner filed suit asking "to be provided with a diet consistent with his sincerely held religious beliefs; he primarily requested organically grown produce washed in distilled water." *Udey*, 805 F.2d at 1219. The district court entered judgment for the defendants, finding that "the prison system was not required to cater to Udey's requests." *Id.* The Fifth Circuit affirmed the lower court's ruling based upon its agreement "that the probable proliferation of claims" "and the concomitant need to meet multiple distinct dietary requirements" "constitute a problem that the state has a good reason to avoid." *Id.* at 1220-21 (emphasis omitted). Even assuming this analysis has not been overridden by *Turner* and *O'Lone*, the appellate court determined that the prisoner's

lawsuit was unavailing, not that the prisoner had a right to certain individualized dietary requests. *See id.*; *cf. Muhammad v. Sapp*, 388 F. App'x 892, 898-99 (11th Cir. 2010) (holding that it was not clearly established that denying a prisoner's requested Islamic dietary accommodations violated federal law; relying upon a case in which the court had rejected a prisoner's First Amendment diet claim by analyzing prison regulations under a more stringent, pre-*O'Lone* standard).

Plaintiff next cites *Hudson v. Dennehy*, 538 F. Supp. 2d 400 (D. Mass. 2008), *final j. entered*, No. CIV-01-12145, 2008 WL 1451984 (D. Mass. Apr. 11, 2008), *and aff'd sub nom. Crawford v. Clarke*, 578 F.3d 39 (1st Cir. 2009). In *Hudson*, the court granted declaratory and injunctive relief to the Muslim prisoner-plaintiffs; however, the general right to a religious diet was the right at issue. *See id.* at 403 (stating that plaintiffs claimed their religious rights were violated by defendants' "refus[al] to provide Muslim inmates with halal meals"), 407 (noting that the relevant corrections department did "not offer Muslim inmates a strictly Halal diet"), 411 ("The DOC's refusal to provide a daily Halal menu to Muslim inmates substantially burdens plaintiffs' exercise of their religious beliefs . . . ."). The plaintiffs' pleading "was focused more on obtaining a Halal menu consistent with their beliefs, than with demands for specific items for food, like meat." *Id.* at 411 n.21. The district court ultimately held that the "failure to provide . . . daily Halal meals" was a violation of RLUIPA. *Hudson*, 2008 WL 1451984, at *1. The court

was not required to address a claim premised upon entitlement to a particular modification of an established and available halal diet.[23]

Plaintiff's citation to the dissenting opinion in *Navajo Nation v. U.S. Forest Service* is closer to the point but this decision still fails, alone or in combination, to provide the requisite warning to a reasonable official. *See* Pl.'s Resp. at 25; *Navajo Nation*, 535 F.3d 1058, 1090-91 (9th Cir. 2008) (Fletcher, J., dissenting). *Navajo Nation* was not a constitutional case but an action under the Religious Freedom Restoration Act ("RFRA") regarding the federal government's planned use of treated wastewater to make artificial snow on mountains considered sacred by certain Indian tribes. *See id.* at 1062-63, 1067-78 (majority opinion). Discussing RFRA's purpose "to restore the application of strict judicial scrutiny 'in all cases where free exercise of religion is substantially burdened,'" the dissenting judge stated that the Ninth Circuit has "already held that

---

[23] Moreover, in recognizing that other courts have found that a denial of a halal-diet-related request *not* to be a substantial burden on religious exercise, the *Hudson* decision cites cases that, while perhaps assisting Plaintiff's claim in other respects, would not have apprised a reasonable official in Defendant Jones' position that failure to provide such a diet modification is unconstitutional.

> The court recognizes that other courts have reached a different conclusion. *See, e.g.*, *Allah v. Jordan-Luster*, No. 04-1083, 2007 WL 2582199 (C.D. Ill. Aug. 3, 2007) (no accommodation required for a Halal diet including "ritualistically-slaughtered" meat where plaintiff acknowledged that a vegetarian diet was an adequate alternative and would not violate his faith); *Spruel v. Clarke*, No. C06-5021 RJB, 2007 WL 1577729 (W.D. Wash. May 31, 2007) (denial of Halal meat did not burden plaintiff's religious exercise); *Pratt v. Corr. Corp. of Am.*, No. 03-3259, 2006 WL 2375656 (D. Minn. Aug. 16, 2006) ("Plaintiff has failed to present any evidence that he must receive all foods that are Halal in order to fulfill his religion or that receiving [H]alal meat is a central tenet of his religion.").

*Hudson*, 538 F. Supp. 2d at 412 n.21 (citations altered).

prison officials substantially burden religious exercise if they . . . refuse to provide Halal meat meals to a Muslim prisoner." *Id.* at 1090-91 (Fletcher. J., dissenting) (quoting 42 U.S.C. § 2000bb(b)) (citing *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008)); *see also* Pl.'s Resp. at 28-29 (citing *Shakur*). The Muslim plaintiff in *Shakur*—like Plaintiff here—asserted his sincere belief that he was required to have halal (or kosher) meat, but—unlike Plaintiff—sought relief under the First Amendment and RLUIPA because he was permitted only to receive either non-halal meat meals or halal vegetarian meals. The plaintiff requested but was denied a kosher diet (already provided to other inmates) that included the appropriate meat. *See Shakur*, 514 F.3d at 882-83, 885. The Ninth Circuit reversed the entry of summary judgment for the defendants, citing triable issues of fact regarding the *Turner* factors and RLUIPA. *See id.* at 885-88, 889-91. Again, the *Shakur* plaintiff's allegations vary significantly from Plaintiff's, in which the receipt of halal meat is only a matter of quantity or frequency and not of outright refusal. *Compare* Compl. at 6, 14, *and* Pl.'s Resp. at 20, 21-22, 24, 28 (Plaintiff acknowledging that he does receive halal meat meals but not the quantity that he desires), *with Shakur*, 514 F.3d at 885, 888 (plaintiff alleging that his vegetarian diet "interfere[d] with the ritual purity required for his Islamic worship"). Moreover, this Ninth Circuit holding is not the "robust consensus of cases of persuasive authority" that is required for the right to be clearly established within the Tenth Circuit. *al-Kidd*, 563 U.S. at 741-42 (internal quotation marks omitted).

Plaintiff's claims arguably resemble those of the plaintiff in *Abdulhaseeb v. Calbone*, in which the Tenth Circuit considered the claim of a Muslim inmate who

argued in relevant part that he was entitled to a halal diet and that this diet must include halal-certified meats. *See Abdulhaseeb*, 600 F.3d at 1308, 1313-14. In *Abdulhaseeb*, however, the plaintiff was seeking relief because the prison did not offer a halal-meal option at all. 600 F.3d at 1307-08, 1313. The plaintiff was forced to choose from the non-pork meal option or the vegetarian-meal opinion, despite his repeated appeals to prison officials explaining that both diets required him to "eat food I don't know what ingredients are in it," in violation of his sincerely held religious beliefs, or "to do without food." *Id.* at 1317; *see also id.* at 1307-08. Here, Plaintiff affirmatively alleges that he *receives* a halal-designated diet that *includes* halal meats—he simply believes that certified-meat meals should be provided more frequently and attempts to hold Defendant Jones personally liable for this alleged shortcoming. *See* Compl. at 6, 14; Pl.'s Resp. at 20, 21-22, 24, 28.

The Tenth Circuit in *Abdulhaseeb* held that, in light of the lack of evidence supporting the defendants' arguments regarding costs and security concerns, the plaintiff had shown a genuine fact issue over whether the denial of a halal diet containing any meat substantially burdened his religious exercise under RLUIPA. *See Abdulhaseeb*, 600 F.3d at 1314-19. Plaintiff cannot rely on *Abdulhaseeb* to defeat Defendant Jones' qualified-immunity defense to his claim, for two reasons. First, *Abdulhaseeb* does not place the constitutional question at issue in this case—i.e., whether prison officials substantially burden a prisoner's religious exercise by providing halal-certified meats in a lesser quantity than the prisoner sincerely believes necessary—"beyond debate," *al-Kidd*, 563 U.S. at 741. The Court did not address or decide whether a prisoner's sincerely held

religious exercise is substantially burdened, as Plaintiff asserts, when he or she is receiving halal-meat meals, as part of a halal-meal option, but not as many of them as he or she believes necessary. Rather, the decision simply reaffirms the long-established principle that prison officials can substantially burden religious exercise "by denying an inmate in their charge *all* means of accessing food he can eat consistent with his (uncontested) sincerely held religious beliefs—thus effectively forcing him to choose between remaining pious or starving." *Abdulhaseeb*, 600 F.3d at 1326 (Gorsuch, J., concurring) (emphasis added). Indeed, the *Abdulhaseeb* majority specifically stated that its analysis "proceed[ed] on the understanding that [the plaintiff] seeks a halal-certified diet that includes halal-certified meats" and that plaintiff's "appeal [did] not involve a request for halal-certified meats in the context of a diet that otherwise is 'halal' in the sense of simply not being 'haram.'" *Id.* at 1313 (majority opinion); *cf. id.* at 1317 ("More than one court has held *the lack of a halal diet* to be a substantial burden on a Muslim's religious exercise." (emphasis added) (citing cases)).

Second, the prison officials in *Abdulhaseeb* confronted a situation that was dramatically different from the one Defendant Jones is alleged to have confronted in Plaintiff's case. *Compare id.* at 1307-08 (quoting from the plaintiff's grievances and officials' responses), *with* S.R. Ex. 6, at 8, 10 (Plaintiff's Requests to Staffs addressed to Defendant Jones). To defeat Defendant Jones' qualified-immunity defense to this claim, Plaintiff must establish that the "contours of the right" asserted were "sufficiently clear that a reasonable official would understand that *what he is doing* violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable officer that *his conduct* was unlawful in the situation *he* confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (emphasis added) (citation and internal quotation marks omitted). Viewed in Plaintiff's favor, the summary-judgment record shows that Defendant Jones "confronted" a situation in which (i) he approved a religious-diet policy authorizing the provision of halal-designated meals for inmates in ODOC custody, in response to Plaintiff's previous lawsuit challenging the *absence* of such a policy; and (ii) Plaintiff twice asked Defendant Jones to answer Grievance 11-316 after it was misdirected to the CMO. *See, e.g.*, Compl. at 3-4, 8-9; Pl.'s Aff. at 1-2; S.R. Ex. 6, at 8, 10; Pl.'s Resp. Exs. 7, 9. Unlike in *Abdulhaseeb*, Plaintiff's written submissions to Defendant Jones did not raise specific religious objections to ODOC's halal-diet policy—indeed, they did not mention Plaintiff's religion or a halal diet at all. *See* S.R. Ex. 6, at 8, 10; *Abdulhaseeb*, 600 F.3d at 1307-08, 1317. A reasonable officer would not have known that his or her conduct in these circumstances—i.e., implementing the halal-diet policy in response to Plaintiff's previous lawsuit and failing to respond to two facially unrelated grievance submissions—denied Plaintiff "*all* means of accessing food he [could] eat consistent with his . . . sincerely held religious beliefs." *Abdulhaseeb*, 600 F.3d at 1326 (Gorsuch, J., concurring) (emphasis added); *cf. Lovelace*, 472 F.3d at 199 ("A prison official violates this clearly established right if he *intentionally and without justification* denies an inmate his religiously mandated diet." (emphasis added)).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it

66

protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (internal quotation marks omitted). Plaintiff has failed to show that Defendant Jones would have had "fair warning that he could be held liable for his conduct under a supervisory-liability theory" for violating Plaintiff's First Amendment rights. *Cox*, 800 F.3d at 1247. Plaintiff "[c]annot discharge [his] burden by relying upon authorities that do no more than establish general legal principles—even if those principles are apposite in the [First Amendment free exercise] context." *Id.* at 1247 n.8. "Applying [Plaintiff's] formulation would encompass a very broad spectrum of conduct directed at prisoners and result in the examination of cases that would not have given [Defendant Jones] the requisite warning under the facts of this case." *Stewart*, 701 F.3d at 1331. And Plaintiff's burden may not be excused or transferred based upon his pro se status in this lawsuit. *See, e.g.*, *id.* at 1326, 1327-28, 1330-33 (upholding district court's dismissal based upon qualified immunity due to plaintiff's failure to show that the "more specific" formulation of the First Amendment right pertinent to the facts alleged in pro se complaint was clearly established); *Burden v. Wood*, 200 F. App'x 806, 808 (10th Cir. 2006) (affirming entry of summary judgment for police officer where pro se plaintiff "made no effort to rebut" the officer's claim of qualified immunity).

Based upon the relevant case law, "the most [the undersigned] can say is that [Defendant Jones] had warning" that his agency's adoption of a halal-meal policy "*might* violate [Plaintiff's] free exercise right if the policy was not reasonably related to legitimate penological interests." *Stewart*, 701 F.3d at 1333. But the undersigned cannot say that it was clearly established and "beyond debate" that Defendant Jones' conduct in

(i) approving a religious diet policy authorizing the provision of halal-designated meals for inmates in ODOC custody, or (ii) rejecting two administrative grievance submissions (which did not mention a religious or halal diet), violated Plaintiff's constitutional rights. *See id.*; *al-Kidd*, 563 U.S. at 741. Defendant Jones therefore "deserves qualified immunity even assuming . . . that his alleged [halal-diet] policy violated the [First] Amendment." *al-Kidd*, 563 U.S. at 743. More specifically, Plaintiff has not met his burden to show that clearly established law in 2011 to 2013 would have put a reasonable corrections official such as Defendant Jones on notice that these actions would effect a First Amendment free exercise violation. *Cox*, 800 F.3d at 1236. "Absent such knowledge, under then-extant clearly established law, the conduct of" Defendant Jones "with respect to a particular prisoner" could not give rise to a First Amendment violation. *Id.*[24] Consequently, Defendant Jones is entitled to summary judgment on the basis of qualified immunity.

---

[24] Because it is recommended that qualified immunity be granted only on the ground that Plaintiff's "purported right was not 'clearly established' by prior case law," the Court need not resolve the separate question of "whether the purported right exists at all." *Reichle*, 132 S. Ct. at 2093.

4. <u>Defendants Caldwell and Fennell's Arguments for Summary Judgment on Plaintiff's RLUIPA Claim</u>

Plaintiff additionally argues that the denial of a proper and nutritious halal diet has substantially burdened the exercise of his religion in violation of RLUIPA. *See* Compl. at 8, 9, 11, 13-15. This claim reasonably implicates Defendants Patton, Caldwell, and Fennell. *See id.* Defendant Patton fails to specifically address Plaintiff's halal-diet RLUIPA claim, limiting his argument for summary judgment to Plaintiff's legal-name-related RLUIPA claim. *See* ODOC Defs.' Mot. at 37-39. LCF Defendants Caldwell and Fennell, however, seek summary judgment on the merits of this RLUIPA claim, and so the undersigned evaluates whether summary judgment for these Defendants is warranted. *See* LCF Defs.' Mot. at 17-20.

As an initial matter, LCF Defendants argue that Plaintiff may not sue Defendants for money damages under RLUIPA. *See id.* at 19-20; *Stewart*, 701 F.3d at 1334 ("[T]here is no cause of action under RLUIPA for individual-capacity claims."); *accord Morton*, 528 F. App'x at 842; *cf. Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."). Plaintiff expressly concedes that he is seeking only declaratory and injunctive relief on this aspect of his lawsuit and that he is not attempting to obtain monetary damages on his RLUIPA claims. *See* Pl.'s Resp. at 23. The undersigned thus considers whether Defendants Caldwell and Fennell are entitled to summary judgment on Plaintiff's RLUIPA claims for declaratory and injunctive relief.

## a. Violation of RLUIPA

RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015); *see* 42 U.S.C. § 2000cc-1(a); *Abdulhaseeb*, 600 F.3d at 1312-13.[25] Specifically:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

---

[25] LCF Defendants have not specifically disputed that private prison employees may be sued under RLUIPA, and the Tenth Circuit has suggested in an unpublished decision that such employees are amenable to suit. *See Phillips*, 508 F. App'x at 750 (noting that "several courts have held that under [RLUIPA], private prisons qualify as 'instrumentalities' of state government" within the meaning of § 2000cc-5(4)(A)(ii)); *cf. Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 921-27 (9th Cir. 2011) (determining whether RLUIPA claims would lie against private prison employees by reference to § 2000cc-5(4)(A)(iii), which defines "government" to include any person "acting under color of State law"). *Abdulhaseeb*, 600 F.3d at 1305 & n.1, 1306, 1319-20 (reversing district court's grant of summary judgment to private prison officials on certain RLUIPA claims). In a previous suit of Plaintiff's, this Court assumed that a RLUIPA claim could be cognizable against a private prison company. *See Alamiin v. Beasley*, No. 06-871-F, 2011 WL 2636538, at *5 n.6 (W.D. Okla. June 13, 2011) (R. & R.) (analyzing RLUIPA claim on the merits where GEO's predecessor corporation "d[id] not make any argument that it is or is not amenable to suit under RLUIPA"), *adopted*, 2011 WL 2649712 (W.D. Okla. July 6, 2011). *But see Raheem v. Miller*, No. 09-80-C, 2010 WL 2595112, at *12 & n.29 (W.D. Okla. May 14, 2010) (R. & R.) (recommending summary judgment on RLUIPA claim to two private prison officials in their "individual capacities" because they "were not parties to any contract between the federal government and GEO"), *adopted*, 2010 WL 2595082 (W.D. Okla. June 23, 2010); *Jones v. Barry*, 33 F. App'x 967, 971 & n.5 (10th Cir. 2002) (stating that private prison defendants "do not have an 'official capacity'" for Eleventh Amendment purposes although they can commit acts under color of state law for § 1983 purposes).

> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2).

The Supreme Court has explained that RLUIPA is designed to provide "expansive protection for religious liberty":

> Congress defined "religious exercise" capaciously to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." [42 U.S.C.] § 2000cc-5(7)(A). Congress mandated that this concept "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." [*Id.*] § 2000cc-3(g). And Congress stated that RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." [*Id.*] § 2000cc-3(c).

*Holt*, 135 S. Ct. at 860. RLUIPA does not, however, require the government "to affirmatively subsidize religion." *Abdulhaseeb*, 600 F.3d at 1320 (citing 42 U.S.C. § 2000cc-3(c); *Cutter v. Wilkinson*, 544 U.S. 709, 720 n.8 (2005)).

### b. Religious Exercise

To proceed with his RLUIPA claim, Plaintiff first "must demonstrate that he wishes to engage in . . . a religious exercise." *Abdulhaseeb*, 600 F.3d at 1312; *accord Morton*, 528 F. App'x at 841. Plaintiff has submitted sworn allegations to support the proposition that partaking of a proper and nutritious halal diet "implicates his religious exercise" and "is a dictate of his religious faith." *See* Compl. at 4-5, 9, 11, 14; Pl.'s Aff. at 1-2, 6-8; *Holt*, 135 S. Ct. at 862. Defendants Caldwell and Fennell do not dispute that Plaintiff's desire to receive a proper and nutritious halal diet that includes a certain

quantity of meat is a wish to exercise his religion. *See* LCF Defs.' Mot. at 18. Plaintiff thus has met his burden to prove this first step.

### c. Motivated by a Sincerely Held Belief

Next, Plaintiff must show that his desire for a proper and nutritious halal diet is "motivated by a sincerely held belief." *Abdulhaseeb*, 600 F.3d at 1312; *see Holt*, 135 S. Ct. at 862 ("[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." (citation omitted)).

Plaintiff has alleged under oath that his wish for a halal diet that meets his criteria is a product of his sincerely held religious beliefs. *See* Compl. at 4, 6, 9, 14-15. Defendants "do not challenge" either "the religious nature of [Plaintiff's] beliefs" or that these beliefs are sincerely held by Plaintiff. *See* LCF Defs.' Mot. at 18; *Abdulhaseeb*, 600 F.3d at 1314-15. "There is no evidence in this record that [Plaintiff] does not sincerely hold his expressed beliefs that he should eat a halal diet that includes meats, even though other Muslims may find a vegetarian or non-pork diet sufficient to satisfy Islam." *Abdulhaseeb*, 600 F.3d at 1314; *cf. Cutter*, 544 U.S. at 725 n.13 (noting that "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion").

### d. Substantial Burden

Finally, Plaintiff must demonstrate that his exercise of religion has been subjected "to a substantial burden imposed by the government." *Abdulhaseeb*, 600 F.3d at 1312.

> [T]he inquiry here isn't into the merit of the plaintiff's religious beliefs or the relative importance of the religious exercise: we can't interpret his religion for him. Instead, the inquiry focuses only on the coercive impact

of the government's actions. . . . . [W]e take religious claimants as we find them, assessing the coercive impact the government's actions on the individual claimant's ability to engage in a religious exercise, as he understands that exercise and the terms of his faith. This court has explained that a burden on a religious exercise rises to the level of being "substantial" when (at the very least) the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief—for example, by presenting an illusory or Hobson's choice where the only realistically possible course of action available to the plaintiff trenches on sincere religious exercise.

*Yellowbear v. Lampert*, 741 F.3d 48, 55 (10th Cir. 2014) (citing *Abdulhaseeb*, 600 F.3d at 1315).

Plaintiff alleges and attempts to show that his religious exercise has been substantially burdened because the diet he has received is (i) noncompliant with his religious beliefs in that it does not offer sufficient meat-based dishes; and (ii) non-nutritious in that it does not offer sufficient calories and includes spoiled foods. *See* Compl. at 4, 6, 9, 11, 14; Pl.'s Resp. Exs. 11, 12, 13, 14, 15. Plaintiff contends that he is prevented from participating in the activity of receiving a proper halal diet and that his only other options are to "starve" or eat off the main menu and "go to hell eternally." Compl. at 9; Pl.'s Resp. at 20-21, 23-24. Plaintiff further contends that, for the period after he was instructed to follow a special medical diet, he was required to forgo his right to a necessary medical diet and unspecified "medical care" in order to continue receiving halal meals. *See* Compl. at 6, 11, 14; Pl.'s Aff. at 6; Pl.'s Resp. at 30; Pl.'s Waiver of Treatment at 1.

Defendants Caldwell and Fennell present two facts to negate Plaintiff's showing of a substantial burden: (i) that prior to January of 2012, Plaintiff received a vegetarian meal supplemented by halal-certified meat; (ii) after that date, LCF followed a practice of providing prepackaged halal meals that came from a certified vendor. *See* LCF Defs.' Mot. at 18 (citing S.R. Exs. 2, 3 (Doc. No. 59-3), 4 (Doc. No. 59-4)). Citing *Williams v. Morton*, 343 F.3d 212 (3d Cir. 2003), these Defendants contend that "Plaintiff is not entitled to a meal of his liking," but only "a reasonably compliant meal." *See* LCF Defs.' Mot. at 18. Defendants also cite an unpublished Ninth Circuit decision, *Watkins v. Shabazz*, 180 F. App'x 773 (9th Cir. 2006), in which the appellate court upheld the grant of summary judgment in defendants' favor on a prisoner-plaintiff's RLUIPA claim. *See* LCF Defs.' Mot. at 18. The *Watkins* court explained:

> The district court properly held that defendants did not substantially burden the free exercise of Watkins' religion in violation of RLUIPA because they gave him two alternatives to eating non-Halal meat: to eat the nutritionally equivalent meat substitute provided by the prison, or to find an outside religious organization to contract with the prison to provide Halal meat.

*Watkins*, 180 F. App'x at 775 (citing 42 U.S.C. § 2000cc-1(a)).

For the reasons outlined below, however, neither these facts nor these authorities defeat Plaintiff's sworn allegations and evidence reflecting that both pre- and post-January 2012, Plaintiff believed that the meals actually provided to him lacked sufficient meat and calories, were not properly halal and not nutritious, and did not adequately address his medical issues, thus preventing him from "participating in an activity

motivated by a sincerely held religious belief" and/or placing "considerable pressure" on him "to violate a sincerely held religious belief." *Yellowbear*, 741 F.3d at 55.

First, Plaintiff's sworn allegations directly dispute the adequacy and propriety of his facility's halal-meal policy both before and after January 2012. *See, e.g.*, Compl. at 3-5, 6, 9, 11, 14. Next, with respect to *Williams*, a First Amendment case, it is well-established that "[t]he standards under RLUIPA are different from those under the Free Exercise Clause." *Abdulhaseeb*, 600 F.3d at 1314. In *Williams*, the Third Circuit upheld the grant of summary judgment to defendants on the prisoner-plaintiffs' First Amendment free exercise claim because it found, under the first *Turner* factor, evidence in the record that "providing vegetarian meals, rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget." *Williams*, 343 F.3d at 218. The focus in that case upon legitimate penological interests is not dispositive of whether Plaintiff has shown a substantial burden upon his religious exercise for RLUIPA purposes. *See Yellowbear*, 741 F.3d at 53, 56 (explaining that the plaintiff must carry the burden of showing a sincerely held religious belief that is substantially burdened *before* the burden of persuasion shifts to government to show "that the burden it has imposed" on the plaintiff serves a 'compelling government interest' and 'is the least restrictive means' of furthering that interest" (quoting 42 U.S.C. § 2000cc-1(a)). And contrary to LCF Defendants' suggestion, Plaintiff need not show that "he has been denied a religious diet" altogether to carry this burden. LCF Defs.' Mot. at 18; *see Abdulhaseeb*, 600 F.3d at 1316-19.

With respect to *Watkins*, LCF Defendants have not shown that the court's focus on the plaintiff's "alternatives" is a proper approach to the substantial-burden inquiry. In First Amendment cases, "the availability of alternative means of practicing religion is a relevant consideration, but RLUIPA provides greater protection": "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt*, 135 S. Ct. at 862 (explaining that plaintiff's access to religious diets, publications, and advisors was not relevant to "whether the government has substantially burdened religious exercise (here, the growing of a ½-inch beard)"). And, in contrast to *Watkins*, Defendants do not point to any alternative to the halal diet, shown to be available to Plaintiff, that would have remedied the cited deficiencies. Indeed, Plaintiff argues that LCF's certified vendor is able to supply additional halal-meat meals, which Defendants have not directly refuted, and specifically objects that Defendants have refused to supplement his current diet with such meals. *See* Compl. at 14; Compl. Exs. at 60; Pl.'s Resp. at 20; Pl.'s Resp. Ex. 11.

Regarding Plaintiff's waiver of his right to receive a Diet for Health and suggestion that he receive a medical-halal diet, Defendants' Motion asserts that "to attempt to provide" Plaintiff, "one inmate out of 2,500," "with a halal meal that is both compliant with religious restrictions and meets the health concerns" addressed by the Diet for Health "is untenable." LCF Defs.' Mot. at 19. But again Defendants do not cite any evidence that would allow the Court to adopt that conclusion on summary judgment. *See Mosier*, 937 F.2d at 1525 (noting that counsel's factual statements "do not constitute

summary judgment evidence").  In addition, Plaintiff has presented evidence that at least one LCF inmate *does* receive a medical-halal diet containing meat meals.  *See* Pl.'s Resp. at 24; Pl.'s Resp. Ex. 16.

At this stage, and on the present record, Plaintiff "has satisfied his obligations under both the sincere religious exercise and the substantial burden tests."  *Yellowbear*, 741 F.3d at 56 ("[A]t the summary judgment stage, . . . [Plaintiff] is obliged to show merely that a reasonable fact finder could rule his way when viewing the evidence in the record in the light most favorable to him.").  Defendants have not questioned whether Plaintiff's request implicates a religious exercise or whether his belief is sincerely held. And Defendants have not shown undisputed facts that would establish that Plaintiff's sincere religious beliefs were not substantially burdened.  *See id.* (explaining that the substantial-burden inquiry is an examination of whether the plaintiff has shown that the defendants "[c]reat[ed] a situation that forces the religious claimant to choose between following the dictates of his faith" and "winning an important benefit" or suffering a considerable penalty"); *cf. Beasley*, 2011 WL 2636538, at *8 (finding defendant had satisfied its burden to show an absence of evidence on the substantial-burden issue where Plaintiff showed only that "his approved religious diet was not provided on isolated occasions").

   e.  *Defendants' Burden: Compelling Government Interest and Least*
       *Restrictive Means*

Because "a reasonable finder of fact could conclude that [Defendants Caldwell and Fennell] [have] substantially burdened [Plaintiff's] religious exercise" through denial

of a proper and nutritious halal diet, "the burden of persuasion now shifts" to these Defendants. *Yellowbear*, 741 F.3d at 56; *accord Abdulhaseeb*, 600 F.3d at 1318. To meet their burden, and establish entitlement to judgment as a matter of law, Defendants must show that the infringement on Plaintiff's religious beliefs "serves a 'compelling government interest' and 'is the least restrictive means' of furthering that interest." *Yellowbear*, 741 F.3d at 56. Defendants must satisfy this test with "the facts in the record . . . viewed in the light most favorable to [Plaintiff], as the non-movant." *Id.* at 57.

This "inquiry . . . proceeds in light of the particular burden the government has placed on the particular claimant before us." *Id.* Here, LCF Defendants suggest that its pre-January 2012 policy of providing vegetarian meals along with some halal-certified meat was rationally related to "'*legitimate* penological interests in simplified food service, security, and staying within the prison's budget.'" *See* LCF Defs.' Mot. at 18 (quoting *Williams*, 343 F.3d at 218 (emphasis added)). But these Defendants point to no evidence, only their counsel's argument and citation to *Williams*, to support the proposition that these were relevant and *compelling* interests—the proper standard under RLUIPA—at LCF or that it would have been problematic or cost-prohibitive to supply Plaintiff with a different halal diet under its pre-January 2012 scheme. *See id.* These general contentions are insufficient to show that simplified food service, security, and budget concerns "qualify as compelling in the context of" this particular case, rather than in the abstract. *See Yellowbear*, 741 F.3d at 58 (noting that cases cited by prison-defendant "hold only . . . that the particular access sought by the particular claimants in each dispute was not feasible on the particular set of facts at issue" in those cases).

Nor do LCF Defendants point to any specific support for the proposition that the burden imposed by LCF's post-January 2012 halal diet—more relevant to the claims for injunctive relief—served a compelling governmental interest. LCF Defendants here again point only to vague, unsupported assertions regarding simplified food service, security, and budget. *See* LCF Defs.' Mot. at 18-19. While such justifications "may well qualify as a compelling governmental interest," the undersigned "need not decide whether these interests satisfy the RLUIPA standard, because there simply is no record evidence regarding the defendants' contentions." *Abdulhaseeb*, 600 F.3d at 1318 (internal quotation marks omitted).

> [T]he deference this court must extend to the experience and expertise of prison administrators does not extend so far that prison officials may declare a compelling governmental interest by fiat. At summary judgment, the government must do more than assert an "undue burden" or a "compelling interest." When weighing the existence of a compelling interest, the deference due prison administrators may be enough to nudge a questionable case across the line, but it doesn't mean prison officials get to recognize compelling interests on their own. If that were the case, RLUIPA's supposedly strict judicial scrutiny would become no judicial scrutiny at all.

*Yellowbear*, 741 F.3d at 59-60. The Court cannot conclude that LCF Defendants have carried their summary judgment burden of establishing a compelling interest as a matter of law where these Defendants "[do] not even attempt to quantify the costs [they] face[], let alone try to explain how these costs impinge on prison budgets or administration." *Id.* at 59.

Finally, "[a]s part of its burden to show that its policy represents the least restrictive means available to further its putatively compelling interest, the government

must of course 'refute . . . alternative schemes' suggested by the plaintiff to achieve that same interest and show why they are inadequate." *Id.* at 62 (omission in original) (quoting *United States v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011)). Again, LCF Defendants offer no specific argument or evidence as to whether refusing to provide a version of the halal diet desired by Plaintiff "is the least restrictive means [that] the state can employ to satisfy its interests." *Abdulhaseeb*, 600 F.3d at 1319; *see also Holt*, 135 S. Ct. at 864 (noting that RLUIPA requires courts to consider whether exceptions to a challenged policy are required and that defendants must "prove that denying the exemption" requested by plaintiff "is the least restrictive means of furthering a compelling governmental interest"). And Plaintiff has pointed to at least two items in the record to support his contention that alternative schemes are available at LCF: (i) evidence reflecting that inmate Ferris receives meals that are halal, meat-containing, and medically prescribed (*see* Pl.'s Resp. at 24; Pl.'s Resp. Ex. 16); and (ii) evidence that prepackaged meat-containing halal meals are available from LCF's current vendor (*see* Pl.'s Resp. at 30; Compl. Ex. 1, at 60; Pl.'s Resp. Ex. 11).

### f. Conclusion

On the current record, "where there is factual dispute as to the extent of the burden on [Plaintiff's] religious activities, the extent of the burden that would be created by accommodating [Plaintiff's] request, and the existence of least restrictive alternatives," summary judgment on Plaintiff's halal-diet RLUIPA claim is not appropriate.

*Abdulhaseeb*, 600 F.3d at 1319 (internal quotation marks omitted).  LCF Defendants'

request for summary judgment should be denied in this respect.[26]

### 5.  LCF Defendants' Assertion of Res Judicata

LCF Defendants nominally argue that Plaintiff's halal-diet claims, or at least those

arising prior to May 14, 2012, are barred by the doctrine of res judicata.  *See* LCF Defs.'

Mot. at 24-25.  The successful raising of a res judicata defense

> requires the satisfaction of four elements: (1) the prior suit must have ended
> with a judgment on the merits; (2) the parties must be identical or in privity;
> (3) the suit must be based on the same cause of action; and (4) the plaintiff
> must have had a full and fair opportunity to litigate the claim in the prior
> suit.

---

[26] In *Miller*, summary judgment was denied to the defendants on Plaintiff's RLUIPA
claim on substantially similar grounds:

> Defendants argue that the governmental interest in reducing costs, streamlining
> food production, limiting the required number of staff, maintaining consolidation
> of vendors, and preventing security risks are "compelling justifications under
> RLUIPA."  Properly supported, some of these justifications are no doubt
> compelling.  For example, the undersigned is well aware of the budgetary
> challenges currently being faced by governmental agencies such as ODOC.  That
> makes it all the more frustrating that counsel for Defendants, who know the
> burden required of them by controlling Tenth Circuit precedent, have come
> forward with absolutely no evidence in support of these proffered justifications.
> Further, Defendants have completely failed to address—through argument or
> evidence—whether denying Plaintiff a halal diet is the least restrictive means of
> satisfying its interests.  These failures preclude summary judgment in their favor.

*Miller*, 2010 WL 3603150, at *11 (citing *Levie v. Ward,* No. CIV-05-1419-HE, 2007 WL
2840388, at *18 (W.D. Okla. Sept. 27, 2007) ("Defendants cannot simply assert that the
current policy is the least restrictive way of achieving their compelling state interest.
They must demonstrate this fact through affidavits or other evidence.  Defendants have
not done so, and therefore they have not shown they are entitled to summary judgment as
to this aspect of Plaintiff's RLUIPA claim.")).

*Plotner v. AT & T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) (internal quotation marks omitted).

LCF Defendants argue that the judgment entered in *Miller*, Case No. CIV-08-1371-F, precludes Plaintiff's ability to bring his current halal-diet-related claims now. Plaintiff responds that "[t]his case is not like CIV-08-1371-F," as his prior lawsuit "was about no halaal diet" rather than the specific halal-diet policies and practices about which he is currently complaining. Pl.'s Resp. at 24. The undersigned agrees with Plaintiff and finds LCF Defendants have not established that *Miller* and this lawsuit are "based on the same cause of action." *Plotner*, 224 F.3d at 1168, 1169-70. As expressly noted by the Tenth Circuit, Plaintiff's claims in the prior lawsuit were premised upon the "flat denial" of a halal or kosher diet and "are qualitatively different" than his current claims, "which focus on the suitability" of the halal-diet policy now in place and various officials' refusals to enforce and/or deviate from that policy (or to adhere to the injunction order in that case, *see infra*). *Morton*, 528 F. App'x at 843. Plaintiff's claims arising from the allegedly improper execution of the halal-diet policy did not "arise from the same . . . event" as did the claims in his previous lawsuit, which arose from the absence of an available halal or kosher diet. *Plotner*, 224 F.3d at 1169 (internal quotation marks omitted). LCF Defendants' own briefing, carefully parsed, actually reinforces the distinction: "In the prior case Plaintiff was seeking a halal diet among other matters. Here he is complaining that he is not receiving the halal diet as previously ordered in that he is getting a 'pseudo halal diet.'" LCF Defs.' Mot. at 25.

Even assuming the other elements were met, LCF Defendants have not shown that Plaintiff's prior and current claims are based on the same cause of action. Summary judgment on the basis of res judicata should be denied.

### III. Count Three: LCF's Noncompliance with Court's Order and Judgment as Basis for Section 1983 and RLUIPA Claims

*A. Plaintiff's Complaint*

During Plaintiff's litigation of a prior halal-diet-related lawsuit in this Court, *AlAmiin v. Miller*, Case No. CIV-08-1371-F, "ODOC adopted a halal-meal option for Muslim inmates. In addition, . . . the district court entered an injunction requiring that while he is housed at LCF, Mr. AlAmiin shall be served a halal diet that is prepared and served in conformance with ODOC's policy regarding kosher meal preparation and service." *Morton*, 528 F. App'x at 841; *see* Compl. at 11, 13-15. The Order and Final Judgment entered in *Miller* prescribed that a halal diet, "consist[ing] of food prepared and served in compliance" with certain ODOC standards and procedures, "shall be provided to Plaintiff so long as he is housed at LCF." *See* Order & Final J., No. CIV-08-1371-F (W.D. Okla. May 14, 2012) at 4.

In Count Three, Plaintiff asserts that LCF Defendants Caldwell and Fennell have violated RLUIPA and the First and Eighth Amendments by failing to comply with the Order and Final Judgment issued in *Miller*. Compl. at 3, 6, 11, 13-15 (citing *Miller*); *see also* Pl.'s Aff. at 5-9. Alleging that in *Miller* GEO/LCF was ordered to provide Plaintiff "with a nutritional Halaal diet consistent with [P]laintiff's sincerely held beliefs," Plaintiff contends that Defendant Caldwell's and Defendant Fennell's failure to follow

the Court's directive in that case amount to violations of RLUIPA and the First and Eighth Amendments. Compl. at 3, 6, 11, 13-15; *see also* Pl.'s Aff. at 5-9.

B. *Analysis*

As a threshold matter, Plaintiff in Count Three covers much of the same ground as in Counts One and Two. To the extent Plaintiff asserts in Count Three that Defendants' failure to provide him a proper halal diet has violated the First Amendment and RLUIPA, the underlying factual allegations are duplicative or merely supportive of Plaintiff's First Amendment and RLUIPA claims in Count One. *Compare* Compl. at 8-9, *with id.* at 11, 13-15. And to the extent Plaintiff complains that Defendants' refusal to provide services to him under his current legal name deprived him of his rights under the Constitution and RLUIPA, this protestation restates Count Two, which is addressed in a separate Report and Recommendation. *Compare id.* at 10, 12, *with id.* at 11, 13-15. The undersigned has considered all relevant and well-pleaded halal-diet and name-change factual allegations of Count Three in evaluating Counts One and Two.

What remains of Count Three, then, is Plaintiff's assertion that failures to comply with the Order and Final Judgment in *Miller* are actionable as violations of RLUIPA and the First and Eighth Amendments.[27] A claim that two individuals have failed to comply with a ruling issued in a separate lawsuit is not a claim for "deprivation of . . . rights . . .

---

[27] Plaintiff's attempt to enforce the Order and Final Judgment that was entered in *Miller* is inappropriate in this lawsuit. *See* Order & Final J. at 4 ("This Order . . . is in place to grant the Court continuing jurisdiction over the terms of the agreement of the parties."); *id.* at 5 ("[T]his Court retains jurisdiction in order to enforce the terms of this order and the Confidential Settlement Agreement.").

secured by the Constitution and laws," 42 U.S.C. § 1983, or for imposition by the government of "a substantial burden on the religious exercise" of an institutionalized person, *id.* § 2000cc-1(a). Dismissal of all § 1983 and RLUIPA claims based on such alleged noncompliance is therefore required.

Further, Plaintiff's allegations regarding the nutritional adequacy of the halal diet provided to him are insufficient to establish a violation of the Eighth Amendment's protection against cruel and unusual punishment. Plaintiff alleges that the halal diet provided at LCF is "nutritional[ly] inadequate" and only provides "500-600 total halaal calories" per day, while "Koshers" are provided with "1100 to 1400 calories daily," as well as "a vari[e]ty of meat meals." Compl. at 11. Under the Eighth Amendment, "[p]rison officials must ensure that inmates receive the basic necessit[y] of nutritionally adequate food." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) (alteration and internal quotation marks omitted) (citing *Farmer*, 511 U.S. at 832-33). Thus, "[a] substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment, where the prison officials demonstrated 'deliberate indifference'" to the inmate's nutritional needs. *Id.* (citation and internal quotation marks omitted).

The Tenth Circuit has rejected the notion, however, that the inability to obtain the diet of one's choice in prison states a cognizable Eighth Amendment claim. *See, e.g.*, *LaFevers*, 936 F.2d at 1120 (affirming dismissal of Eighth Amendment claim where prisoner was denied religious diet but received nutritionally adequate food). Plaintiff elsewhere in his pleading affirmatively states that he has the ability to supplement his

halal diet with other food items offered at LCF and that he has done so. *See, e.g.*, Compl. at 4 (alleging that the ODOC "main menu" has caused Plaintiff to suffer from hy[p]ertension and obesity and that he is being forced "to continue eating" "the [ODOC]/LCF main menu diet"), 11 (alleging that he can "go back to eating" the non-halal "main menu"). Plaintiff's factual allegations do not plausibly reflect a "substantial deprivation" of food or a lack of "nutritionally adequate food"—only a denial of a religious diet that meets his criteria. *See* Compl. at 3-7, 11, 13-15; *Trujillo*, 465 F.3d at 1227. "Although [Plaintiff] may be unable to obtain the diet of his choice," *LaFevers*, 936 F.2d at 1120, Plaintiff's allegations do not permit a reasonable inference that he is being denied nutritionally adequate food—an inquiry conducted without comparison or contrast to other diets served at LCF and without consideration of whether the contested halal-diet policy otherwise violates federal law. Plaintiff fails to state an Eighth Amendment violation with respect to the halal diet he has received at LCF.

For all of these reasons, Plaintiff's claims in Count Three should be dismissed without prejudice for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Motions to Dismiss/for Summary Judgment filed by Defendants Jones, Patton, McCoy, Morton, Caldwell, Danley, and Fennell (Doc. Nos. 60, 67) be GRANTED IN PART AND DENIED IN PART. Defendant Enchassi's Motion to Dismiss/for Summary Judgment (Doc. No. 72) should be GRANTED. Specifically:

1. Plaintiff's federal claims seeking money damages against Defendants Patton, McCoy, and Morton in their official capacities should be dismissed without prejudice because, based on Eleventh Amendment immunity, the Court lacks subject-matter jurisdiction over these claims.

2. With respect to Count One (the Halal-Diet Claims):

   a. The "Pseudo-Halal Diet" claim of conspiracy in violation of 42 U.S.C. § 1983 should be dismissed in its entirety with prejudice as barred by the applicable statute of limitations, and Defendant Enchassi should be dismissed from this lawsuit;

   b. Plaintiff's remaining claims of unlawful conspiracy and of retaliation should be dismissed in their entirety without prejudice for failure to state a claim upon which relief can be granted;

   c. Defendants McCoy, Morton, and Jones should be granted summary judgment on the First Amendment free exercise claim, but this claim should remain pending against Defendants Caldwell, Fennell, and Patton; and

   d. The RLUIPA claim should remain pending against Defendants Patton, Caldwell, and Fennell.

3. To the extent Count Three of the Complaint: (a) attempts to allege a violation of the Constitution or RLUIPA based upon noncompliance with the Order and Final Judgment in *AlAmiin v. Miller*, Case No. CIV-08-1371-F; or (b) attempts to allege a violation of the Eighth Amendment based upon receipt of an improper halal diet, all claims therein should be dismissed without prejudice for failure to state a claim upon which relief can be granted.

4. Plaintiff's Motion Seeking Res[olu]tion of the Summary and Opposition Motions (Doc. No. 104) should be denied as moot.

NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by September 20, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to

appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 30th day of August, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE