# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **WAHIID M. ALAMIIN a/k/a** | ) |
| **JAMES SHOCKEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **Case No. CIV-13-1001-F** |
| | ) |
| **ROBERT PATTON et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Wahiid M. AlAmiin, formerly James Shockey, brings this federal civil rights action against nine Defendants, asserting claims under 42 U.S.C. § 1983 for violations of the United States Constitution and under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").[1]  United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636.  This Report and Recommendation addresses Count Two of the Complaint (the "Legal-Name Claims").

PLAINTIFF'S CLAIMS AND RELIEF SOUGHT

Plaintiff is an Oklahoma state prisoner currently housed at Lawton Correctional Facility ("LCF"), a private prison owned and operated by GEO Group Inc. ("GEO"), pursuant to a contract with the Oklahoma Department of Corrections ("ODOC").  *See* Compl. (Doc. No. 1) at 1 & nn.1-3.  In his three-count Complaint, Plaintiff asserts claims

---

[1] 42 U.S.C. §§ 2000cc to 2000cc-5.

against former ODOC Director Justin Jones; former ODOC Director Robert Patton;[2] ODOC employees Debbie Morton and Genese McCoy; GEO-LCF employees Connie Danley, Dean Caldwell, Nancy Fennell, and Billy Gibson; and Imad Enchassi. *See id.* at 1-3. Defendant Patton is sued in his official capacity only, and Defendant Jones is sued in his individual capacity only. *See id.* at 1; Doc. No. 33. All other Defendants are sued in both their official and individual capacities. *See* Compl. at 2-3.

Plaintiff's claims arise from events alleged to have occurred while he has been housed at LCF. *See id.* at 3-15; Pl.'s Aff. (Doc. No. 1-1, at 1-9). Through this lawsuit, Plaintiff seeks various forms of relief, including compensatory and punitive damages, declaratory judgment, and injunctive relief, based upon actions of Defendants that allegedly violated and are violating Plaintiff's rights under RLUIPA and under the First, Sixth, Eighth, and Fourteenth Amendments. *See* Compl. at 3-15.

In Count Two, Plaintiff alleges violations of RLUIPA and of the First, Sixth, Eighth, and Fourteenth Amendments due to Defendants' refusal to process grievances

---

[2] After this lawsuit was filed, Defendant Patton replaced Defendant Jones as ODOC Director and was substituted as the named Defendant on all official-capacity claims initially raised against Defendant Jones. *See* Doc. Nos. 31, 33. Because Defendant Patton is no longer ODOC Director, the current Director should be substituted as Defendant if any official-capacity claims alleged against the ODOC Director remain after disposition of this Report and Recommendation. *See* Fed. R. Civ. P. 25(d); *Director's Office*, Okla. Dep't of Corr., https://www.ok.gov/doc/Organization/Director's_Office/index.html (last visited Aug. 19, 2016). To reduce confusion, the undersigned refers to all Defendants as they are identified in the Complaint and in their briefs.

and provide him medical treatment pursuant to requests made in his legal name of Wahiid AlAmiin rather than in his former name, James Shockey. *See id.* at 11, 12-13.[3]

<h2 style="text-align:center">MATTERS CONSIDERED</h2>

Relevant to Count Two, two potentially dispositive motions are at issue. Defendants Caldwell, Danley, and Fennell (collectively, "LCF Defendants") have jointly filed a Motion to Dismiss/Motion for Summary Judgment. *See* LCF Defs.' Mot. (Doc. No. 60); Doc. No. 76. Defendants Patton, Jones, McCoy, and Morton (collectively, "ODOC Defendants") have jointly filed a Motion to Dismiss/Motion for Summary Judgment. *See* ODOC Defs.' Mot. (Doc. No. 67). Plaintiff has responded to both Motions. *See* Pl.'s Resp. (Doc. No. 98). The moving Defendants elected not to reply to Plaintiff's Response. *See* Doc. No. 103. The ODOC and LCF Defendants additionally have filed a Special Report (S.R., Doc. No. 59) and a Supplement to the Special Report (Suppl. to S.R., Doc. No. 66) in accordance with the Court's order and *Martinez v.*

---

[3] In Count Three of the Complaint, Plaintiff alleges that Defendants have violated RLUIPA and the First and Eighth Amendments by failing to comply with an order and judgment entered in a previous lawsuit in this Court. *See* Compl. at 3, 6, 11, 13-15. To the extent Count Three complains that Defendants' refusal to provide services to Plaintiff under his current legal name violated his constitutional rights and RLUIPA, this contention largely restates Count Two. *Compare id.* at 10,12, *with id.* at 11, 13-15. Recognizing the liberal construction owed to Plaintiff's pleading, the undersigned has considered the relevant factual allegations of Count Three in evaluating Count Two herein.

*Aaron*, 570 F.2d 317 (10th Cir. 1978). Following discovery and completion of all briefing, Defendants' Motions are ripe for decision.[4]

For simplicity, the undersigned today enters three Report and Recommendations with respect to Plaintiff's claims and Defendants' motions. Herein, the undersigned addresses Count Two of the Complaint. Discussed in another Report and Recommendation are Counts One and Three and ODOC Defendants' invocation of Eleventh Amendment immunity. Plaintiff's claims against unserved Defendant Billy Gibson are addressed in a third Report and Recommendation.

ANALYSIS

In Count Two, Plaintiff complains that Defendants' refusal to process grievances and provide him benefits and services pursuant to requests made in his legal name of

---

[4] Plaintiff and Defendants have had the opportunity to conduct, and the record reflects they have conducted, discovery in connection with Defendants' Motions. *See* Doc. Nos. 79, 83, 85, 90, 91. All Defendants titled their filings "Motion to Dismiss/Motion for Summary Judgment," and, with respect to certain issues (including the requirement that Plaintiff exhaust his administrative remedies prior to bringing this lawsuit), rely on materials outside of the Complaint and public record. *See* LCF Defs.' Mot. at 7-12, 14-27; ODOC Defs.' Mot. at 10-12, 13, 16-35, 36-39. In opposition, Plaintiff—whose response is titled "Plaintiff's Opposition to the Defendants' Collective Summary Judgment Motions"—expressly relies upon the summary judgment standards of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, and he presents over 50 pages of documentary evidence, as well as physical items of evidence in the form of food trays. *See* Pl.'s Resp. at 1-31; Pl.'s Resp. Exs. 1-18 (Doc. Nos. 98-1 to 98-18). It is evident from Plaintiff's Response that Plaintiff was on notice to present, and did present, all material pertinent to Defendants' Motions and that Plaintiff desired the Court to consider materials outside of the pleadings in ruling on these Motions. Accordingly, the undersigned has treated the Motions as requests for summary judgment with respect to the issue of exhaustion and other specified issues. *See* Fed. R. Civ. P. 12(d), 56(c)(1); *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000).

Wahiid AlAmiin rather than in his former name, James Shockey, violates RLUIPA and the First, Sixth, Eighth, and Fourteenth Amendments. *See* Compl. at 7, 10, 11, 12-13; Pl.'s Aff. at 3-5, 6-9.[5] All Defendants seek dismissal of or summary judgment on these claims, with ODOC Defendants asserting that they are entitled to qualified immunity on the individual-capacity constitutional claims. *See* ODOC Defs.' Mot. at 20-22, 31-35, 36-39; LCF Defs.' Mot. at 14-17, 26-27.[6]

### A. Standard of Review

In their Motions, Defendants seek dismissal of some claims and summary judgment on other claims. These requests invoke different standards of review.

#### 1. Federal Rule of Civil Procedure 12(b)(6)

Defendants move to dismiss certain of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."

---

[5] Although these portions of Plaintiff's pleading contain scattered references to "retaliation" and "conspiracy," they are not reasonably construed as alleging a discrete retaliation or conspiracy federal claim within Count Two. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (citing Fed. R. Civ. P. 8(a)(2))).

[6] As outlined in an accompanying R&R, Plaintiff's federal claims seeking money damages against ODOC Defendants in their official capacities should be dismissed without prejudice based on those Defendants' Eleventh Amendment immunity to suit.

*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief.  *Iqbal*, 556 U.S. at 679.

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (1991); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

### 2.  Federal Rule of Civil Procedure 56

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving

party.  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury.  *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  Parties may establish the existence or nonexistence of a disputed material fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

A defendant seeking summary judgment on the basis of an affirmative defense must show that the undisputed material facts establish all of the elements of the defense.  *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("The defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted.").  If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more

elements of the affirmative defense, absent which summary judgment must be granted in favor of the defendant. *Id.*[7]

### B. *Plaintiff's Complaint and the Parties' Summary Judgment Materials*

#### 1. Plaintiff's Allegations

Plaintiff alleges that in 1999, when he already was a convicted felon in ODOC custody, his former name of James Turner Shockey Jr. was legally changed to Wahiid Mujaheed Al-Amiin, pursuant to an order issued by the District Court of Caddo County, Oklahoma. Compl. at 3; Compl. Ex. 1 (Doc. No. 1-1, at 10-69) at 25, 29, 30.[8] Plaintiff alleges that he has been using his later-adopted name "solely for years" and "without any problems" "to request services and benefits" and to send mail. Compl. at 5, 10, 12-13. Plaintiff alleges that ODOC developed a policy that "clearly established" that Plaintiff has the right to communicate and correspond using his legal name and that Defendants

---

[7] In his Response, Plaintiff generally objects that Defendants' exhibits are not "competent evidence" because they are not authenticated or certified. *See* Pl.'s Resp. at 2, 22, 25. Plaintiff does not specifically dispute the authenticity or accuracy of any of the exhaustion-related documentation provided by Defendants, however. Further, the undersigned's recommendation is based upon evidence that is submitted by Plaintiff himself, publicly available, or included in the Special Report and its Supplement. The Special Report is accompanied by an affidavit in which LCF Warden Hector Rios swears that the contents of the Special Report are true and correct to the best of his knowledge and belief. *See* Doc. Nos. 61-1, 62. And "Plaintiff has not presented any evidence to show that any documents relied on in the [Special] Report are not authentic." *AlAmiin v. Miller*, No. CIV-08-1371-F, 2010 WL 3604660, at *1 (W.D. Okla. Sept. 9, 2010) (rejecting objection to Report and Recommendation based on lack of authenticated documents or evidence).

[8] Although the Caddo County order reflects that Plaintiff's surname is spelled "Al-Amiin," he does not hyphenate his surname in filings in this Court. *See* Compl. at 1; Compl. Ex. 1, at 25.

previously have communicated with him using solely his legal name without any confusion. *Id.* at 10.

Plaintiff asserts that beginning in 2011, certain Defendants began to retaliate against him and to refuse to respond to prison grievances and requests that were made using Plaintiff's legal name. *See id.* at 10, 12-13. Plaintiff contends that Defendants' continued refusal to process his administrative requests and to provide him medical treatment when those requests were made using only his current legal name of Wahiid AlAmiin, rather than his former name, violated RLUIPA and the First, Sixth, Eighth, and Fourteenth Amendments. *See id.* at 11, 12-13. Plaintiff alleges that on July 11, 2011, LCF Health Services Administrator Defendant Danley "upon receipt of grievance did deny [P]laintiff relief to get medical treatment under legal name." *Id.* at 10. Plaintiff further alleges that on August 1, 2011, Defendant Danley, "even after receipt of grievance," "still refused to correct illegal behavior of denying [P]laintiff medical care when requested under legal name." *Id.*

2. Summary Judgment Materials

When assessing Defendants' Motions for summary judgment purposes, the undersigned has treated the factual allegations of Plaintiff's sworn filings (e.g., Plaintiff's Complaint and Response and affidavits attached thereto), Defendants' sworn affidavits, and those of the sworn Special Report, as affidavit evidence to the extent facts are alleged therein based on personal knowledge. *See Hall*, 935 F.2d at 1111; Fed. R. Civ. P. 56(c)(4). Further, the undersigned has considered other materials submitted by the parties as permitted by Federal Rule of Civil Procedure 56(c).

In October 1991, Plaintiff was convicted under the name "James T. Shockey Jr." in the District Court of Latimer County, Oklahoma, for the crime upon which he is currently serving a life sentence. S.R. Ex. 1 (Doc. No. 59-1). In September 1999, after he had been committed to ODOC custody and after he had begun serving this life sentence, Plaintiff's name was legally changed to "Wahiid Mujaheed Al-Amiin" by order of the District Court of Caddo County, Oklahoma. Compl. Ex. 1, at 25.

Pursuant to ODOC's Initial Reception of Offenders Policy, OP-060201, "[n]ewly committed offenders" "sentenced to [ODOC's] custody" "will be accompanied by a Judgment and Sentence certified by the respective court clerk's office." OP-060201 § I(A)(1) (eff. Jan. 31, 2011) (Suppl. to S.R. Ex. 4, at 2-15 (Doc. No. 66-4, at 2-15)). Section I(A)(1) further specifies that "[t]he name appearing upon the inmate's Judgment and Sentence is considered the offender's commitment name and, as such, will be the offender's recognized name during their incarceration." *Id.* Although OP-060201 has been revised several times since 2011, no relevant substantive changes were made to this policy until November 2014, after Plaintiff already had filed this lawsuit. *See, e.g.*, Suppl. to S.R. Ex. 2, at 19-20, 34-35, 49, 63.[9]

_____

[9] In the November 2014 revision, the following language was added to section I(A)(1): "Upon receipt of an amended Judgment and Sentence, the commitment name of an offender will be changed to the name on the amended Judgment and Sentence and considered the offender's commitment name during their remaining incarceration." Suppl. to S.R. Ex. 2, at 49, 63.

With regard to legal-name changes, ODOC's Maintenance and Access of Offender Records Policy, OP-060212, applies to "any offender committed to [ODOC] for supervision or incarceration" and states:

A.    Initial Reception Information
Upon initial reception of any person for supervision or incarceration, . . . the following information will be obtained:
(1)    Name as it appears on the current judgment and sentence, order of probation or other committing document[.]
. . . .
D.    Legal Name Changes
Offenders who receive a legal name change in accordance with current Oklahoma law will submit that information to records staff. The new name will be entered into the offender's record as an alias entry.  The commitment name as it appears on the judgment and sentence will not be changed on the agency's records unless the judgment and sentence is modified by the sentencing court.  The new name will be forwarded to the FBI and the OSBI on an updated fingerprint card.

OP-060212 §§ I, II(A)(1), II(D) (eff. Aug. 27, 2008) (Suppl. to S.R. Ex. 3, at 2-25 (Doc. No. 66-3, at 2-25)).[10]

With regard to mail, ODOC's Correspondence, Publications, and Audio/Video Media Guidelines, OP-030117, apply to "anyone under the authority, custody or care of a prison . . . operated by or contracted with [ODOC]" and prescribes that all outgoing mail must include, in the return address on the envelope or package: "The offender's name under which sentenced and the offender's legal name, if the offender has obtained a name change in accordance with Oklahoma law[.]"  OP-030117 § I(A)(1)(a) (eff. July 30,

_____

[10] There have been no relevant substantive changes to this policy to date.  *See, e.g.*, Suppl. to S.R. Ex. 3, at 27, 28, 52, 53, 77, 78, 102, 103-04.

2009) (Suppl. to S.R. Ex. 5, at 2-16 (Doc. No. 66-5, at 2-16)).[11] The Guidelines include separate requirements for outgoing privileged mail, which is mail that may be sent by inmates to specified persons and organizations and may only be searched and read by prison officials under certain circumstances. *See* OP-030117 § III. Those privileged recipients include certain members of the ODOC "staff," including: the Director; the ARA; the "Associate and Deputy Directors"—i.e., the Director's designee; and the Private Prison and Jail Administrator. *See id.* § III(A)(7).[12] If outgoing privileged mail is "incorrectly marked or addressed, the mail will be returned to the offender to be corrected." *Id.* § III(B)(2). ODOC's Grievance Process requires that all grievance appeals be submitted via mail through the U.S. Postal Service. *See* OP-090124 § VII(B)(1)(d).

On or about June 10, 2009, Plaintiff was informed by Defendant Morton that OP-060212 required ODOC to acknowledge his changed legal name "as an alias not [as his] incarcerated name." ODOC Defs.' Mot. at 22; Suppl. to S.R. Ex. 6 (Doc. No. 66-6) at 8. Plaintiff was advised: "When corresponding with facility staff and this office you are required to list and sign both names not just your legal name change. This includes US Mail and internal facility mail." Suppl. to S.R. Ex. 6, at 8. In May 2010, Plaintiff had a

---

[11] There have been no relevant substantive changes to this policy to date. *See, e.g.*, Suppl. to S.R. Ex. 5, at 17, 37, 56, 75-76.

[12] Although Defendants assert that privileged mail includes mail to "the facility RA," the facility Reviewing Authority (or facility head) is not included within the list of privileged-mail persons on any version of OP-030117 supplied by Defendants. There have been no relevant substantive changes to the privileged mail policy. *Compare* ODOC Defs.' Mot. at 21, *with* Suppl. to S.R. Ex. 5, at 10, 26-27, 46-47, 65-66.

letter returned unanswered by ODOC's Private Prison and Jail Administrator for "[f]ailure to use the name by which [he is] incarcerated." *Id.* at 9. In June 2010, Plaintiff filed a request with the District Court of Latimer County "to amend his record and judgment and sentence to reflect his legal name change." *Id.* at 3-7. This request was denied on July 29, 2010. *Id.* at 2 ("The original Judgment and Sentence was accurate, and remains accurate in that the defendant was known as James Turner Shockey, Jr at the time of his sentencing."). Plaintiff reurged this request in June 2012, and the District Court of Latimer County again denied relief. *Id.* at 14-22 ("The fact that the defendant's name is now Alamiin does not change the fact that his name was Shockey at the time this case was filed. The style of a case reflects the name of the person who was charged with a crime at the time the case was filed.").

### C. *Defendants' Argument for Summary Judgment on the Ground of Nonexhaustion of Administrative Remedies*

Defendants seek summary judgment on the basis of their affirmative defense that Plaintiff's claims are barred because Plaintiff did not, prior to commencing this lawsuit, exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *See* LCF Defs.' Mot. at 9-12; ODOC Defs.' Mot. at 16-20, 23-31; 42 U.S.C. § 1997e(a). The undersigned disagrees. As to the claims of Count Two, Plaintiff did fully and properly exhaust his available remedies by obtaining a response on the merits of his grievance appeal at the highest level of administrative review.

1. The PLRA

The PLRA provides that no action under 42 U.S.C. § 1983 "or any other Federal law" may be brought by a prisoner regarding conditions of confinement "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006) (explaining that § 1997e(a) requires "proper exhaustion"—i.e., "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (internal quotation marks omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90-91.

2. The Oklahoma Department of Corrections Grievance Process

ODOC has adopted an offender Grievance Process, Operations Memorandum OP-090124, through which a prisoner in its custody at any prison facility may seek administrative decisions or answers to complaints. *See generally* OP-090124 (eff. May 24, 2011) (Suppl. to S.R. Ex. 2, at 24-44 (Doc. No. 66-2, at 24-44)).[13] The ODOC Grievance Process requires an inmate initially to attempt informal resolution of his or her complaint by speaking to an appropriate staff member within three days of the relevant

---

[13] The ODOC Grievance Process is occasionally updated, with the prior version superseded when the new version takes effect. ODOC Defendants have supplied multiple versions in the Supplement to the Special Report, *see* Suppl. to S.R. Ex. 2. References herein are to the version of OP-090124 that took effect on May 24, 2011.

incident.  *Id.* § IV(A).  If the inmate is dissatisfied after this initial attempt, then he or she may submit a written "Request to Staff" within seven days of the incident.  *Id*. § IV(B). This first informal level may be bypassed only if the complaint involves a sensitive topic or an emergency.  *Id*. § VIII(A).

The next level of the ODOC Grievance Process is the filing of a formal grievance. If dissatisfied with the response received from a Request to Staff, the inmate may file a grievance within fifteen days of the incident or of the date of the response to the Request to Staff, whichever is later.  *Id*. § V(A)(1).  The grievance is submitted to the facility's Reviewing Authority, defined as the "facility head or facility correctional health services administrator" ("CHSA").  *Id.* §§ I(D), V(B)(1).  This level may be bypassed only if the grievance involves a sensitive topic concerning the Reviewing Authority or CHSA.  *Id*. § VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of a grievance appeal. If dissatisfied with the response to a grievance, the inmate may file a grievance appeal within fifteen days of the date of that response.  *Id*. § VII(A), (B).  The grievance appeal is submitted to the Administrative Review Authority ("ARA"), defined as: the ODOC Director, the ODOC Chief Medical Officer ("CMO"), or their designee.  *Id*. §§ I(E), VII(B).  A grievance appeal may be filed only upon the following grounds: (1) newly discovered/available evidence not considered by the Reviewing Authority; or (2) probable error committed by the Reviewing Authority such as would be grounds for reversal.  *Id.* § VII(A).  The ruling of the ARA is final and concludes the administrative remedy procedures available through ODOC.  *Id*. § VII(D)(1).

### 3. Plaintiff's Attempts to Exhaust Administrative Remedies

On July 15, 2011, Plaintiff submitted a Request to Staff complaining that he had been improperly denied "services for [his] legal name usages" and requesting: (i) "[t]o get medical treatment today for my medical problems"; and (ii) "[t]o stop denying me service for my legal name usages and make notice that my records should be marked with both names so fix your records to reflect both names." Compl. Ex. 1, at 33. A staff member responded that Plaintiff would be treated under the name he was using when he was incarcerated and that Plaintiff's "name and [ODOC] number must match or [he] will cause unnecessary delays in [his] care." *Id.*

Plaintiff then grieved this disposition, submitting Grievance No. 11-410 on July 29, 2011. *See id.* at 34-35. In this Grievance, Plaintiff requested that he stop being "hindered, punished, etc[.]" for using his legally changed name, "to be provided medical under legal name" without "punishment or denying unless I use pagan name in violation of ODOC policy, 1st, 8th Amendments, RLUIPA, & 14th Amend." *Id.* at 34. On August 8, 2011, Defendant Danley denied relief on this Grievance, stating:

> In your recent grievance you have requested that you be treated under the name Wahid AlAmin. In all ODOC data bases you are listed as James Shockey. Until such time as your name or DOC number [is] changed in the DOC databases you will be treated under the name listed there. We, at this facility, do not have the authority or access to make any changes to these data banks. It might prove helpful to you to contact the Oklahoma Department of Corrections regarding your name change.

*Id.* at 36.

Plaintiff appealed this denial of relief, citing reversible error by the Reviewing Authority and requesting that he be able to exclusively use the name "Wahiid AlAmiin,"

along with his unique ODOC number, "on all requests, medical services, letters, files, . . . and speaking with staff" without punishment or retaliation, and that he receive services and benefits as well as medical treatment when sought under his legal name. *Id.* at 37-38 (citing RLUIPA, Eighth Amendment, and Fourteenth Amendment). On August 26, 2011, the CMO, through Defendant McCoy, responded and granted Plaintiff "Partial relief," stating that she had reviewed Plaintiff's medical record and that the health concerns conveyed through Plaintiff's medical services request had not yet been addressed. *Id.* at 39. The CMO further stated that she had contacted Defendant Danley and instructed her to schedule an appointment for Plaintiff's complaints of "bilateral ear pain, headaches, hearing loss, and knee and back pain." *Id.*

4. <u>Analysis</u>

To prevail on their affirmative defense, Defendants must establish through Rule 56(c) evidentiary material that "administrative remedies were, in fact, available" to Plaintiff when his claim arose and that Plaintiff "failed to exhaust these remedies." *Purkey v. CCA Det. Ctr.*, 263 F. App'x 723, 726 (10th Cir. 2008). If Defendants make this showing, the burden shifts to Plaintiff to show a genuine dispute over whether "an administrative remedy, although officially on the books, [was] not capable of use to obtain relief" in his case. *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016); *see Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Little v. Jones*, 607 F.3d 1245, 1249-50 (10th Cir. 2010).

In receiving a response on the merits from the CMO, Plaintiff received a "final ruling" from the ARA that "conclude[d] the internal administrative remedy available to

[Plaintiff] within the jurisdiction of the Oklahoma Department of Corrections." OP-090124 § VII(D)(1); *see id.* § I(E); *Ngo*, 548 U.S. at 90 (noting that the requirements of proper exhaustion include "using all steps that the agency holds out" (internal quotation marks omitted)). The CMO expressly recognized this finality in her response to the Grievance Appeal. *See* Compl. Ex. 1, at 39 (quoting OP-090124 section VII(D)(1) and informing Plaintiff that he had satisfied the exhaustion of administrative remedies required under state statute by receiving a ruling on his Grievance Appeal).

Defendants simultaneously concede that Plaintiff received a response on the merits of his Grievance Appeal of Grievance No. 11-410 and argue that Plaintiff failed to exhaust his administrative remedies. *See* LCF Defs.' Mot. at 12; ODOC Defs.' Mot. at 25, 27. Defendants do not explain how the latter conclusion—i.e., that Plaintiff "never complied with the grievance procedure," LCF Defs.' Mot. at 12—is consistent with the undisputed fact that Plaintiff submitted a Grievance Appeal raising the legal-name issue and received a response to that Appeal addressing Plaintiff's requests for relief on their merits. Plaintiff met his obligations by pursuing his administrative remedies to the highest level available and receiving a response on the merits rather than having the Appeal returned or rejected. *See Ngo*, 548 U.S. at 90, 93-103; *AlAmiin v. Miller*, No. 08-1371-F, 2010 WL 3603150, at *8 (W.D. Okla. June 28, 2010) (R. & R.) (finding that the plaintiff exhausted available remedies upon filing a grievance appeal and receiving response), *adopted*, 2010 WL 3604660 (W.D. Okla. Sept. 9, 2010); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("Congress provided in § 1997e(a) that an inmate

must exhaust irrespective of the forms of relief sought and offered through administrative remedies.").

Defendants also contend that Plaintiff "failed to grieve claims he now asserts in his Complaint" regarding instances, after the August 2011 response to Plaintiff's grievance appeal was provided by the ARA, in which medical care was allegedly denied due to the name usage issue. ODOC Defs.' Mot. at 26-27. Defendants cite no authority for the proposition that Plaintiff would be required to re-grieve the name usage issue each time he was denied medical treatment on that basis. Further, the fact that Plaintiff did eventually receive a medical appointment as had been instructed by the CMO (on October 12, 2011, *see* Pl.'s Resp. at 25; S.R. at 8; S.R. Ex. 14 (Doc. No. 59-14)), and the fact that Plaintiff continued to seek administrative relief into 2012 and 2013 regarding the name usage issue, do not by themselves demonstrate that his Complaint is fundamentally different or lacks a shared factual basis from those grievances upon which he had sought administrative relief. *See Reeder v. Doe*, 507 F. Supp. 2d 468, 481 (D. Del. 2007) (noting that "perfect overlap between the grievance and a complaint is not required by the PLRA"). Defendants have not adequately shown that Plaintiff now raises unexhausted issues, and his Grievance No. 11-410 and appeal thereon "sufficiently alert[ed] prison officials as to the nature of the alleged wrong" and provided "enough information" for officials to investigate and address the complaints raised by Plaintiff regarding his thwarted attempts to communicate and obtain services at LCF through use of his legal name. *See Kikumura v. Osagie*, 461 F.3d 1269, 1282-85 (10th Cir. 2006), *overruled on other grounds by Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008); *Pfeil v. Lampert*,

603 F. App'x 665, 671 (10th Cir. 2015); *Davis v. Okla. Dep't of Corr.*, No. CIV-06-229-HE, 2007 WL 869650, at *10-11 (W.D. Okla. Mar. 20, 2007).

For all of these reasons, Defendants' request for summary judgment should be denied with respect to the affirmative defense of nonexhaustion regarding Plaintiff's Legal-Name Claims. Defendants have not met their burden to show an absence of disputed material fact with respect to Plaintiff's alleged failure to exhaust his administrative remedies as required by the PLRA. *See Hutchinson*, 105 F.3d at 564.

### D. Plaintiff's Claim for Violation of Sixth Amendment

Plaintiff alleges that Defendants' failure to process grievances and answer internal correspondence that did not include Plaintiff's former name resulted in a violation of his Sixth Amendment right of access to the courts. According to Plaintiff, Defendants' actions have resulted in "interference" with Plaintiff's communications "with outside individuals, agencies, and courts by legal name," due to their "instruct[ing] their mail staff to mark out [Plaintiff's] legal name and replace it with only incarcerated name, etc." Compl. at 7; *see also id.* at 10, 11, 12-13; Pl.'s Aff. at 3-5, 6-9. *See generally Robinson v. Gunja*, 92 F. App'x 624, 626 (10th Cir. 2004) (discussing standard applied to claims for denial of access to the courts under both the Sixth Amendment and the First Amendment).

Defendants do not specifically address Plaintiff's access-to-courts claim, but the undersigned considers it for screening purposes under 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1). Pursuant to these statutes, the court shall dismiss any portion of the complaint that fails to state a claim upon which relief may be granted. Likewise, a

district court may sua sponte dismiss a pro se complaint for failure to state a claim upon which relief may be granted where it is "patently obvious" that the plaintiff cannot prevail on the facts alleged and amendment of the pleading would be futile. *McKinney v. Okla., Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991); *see Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007); 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

Prisoners have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *see also Lewis v. Casey*, 518 U.S. 343, 351-52 (1996) (describing right as "meaningful access to the courts" though not imposing specific requirements upon prisons). To state a claim that one's right to court access has been violated, a plaintiff must first allege facts to establish a nonfrivolous underlying cause of action that he or she was prevented from pursuing based on the defendant's actions. *Christopher v. Harbury*, 536 U.S. 403, 415-18 (2002); *see also Robinson*, 92 F. App'x at 626 ("[A]n inmate alleging that a prison has violated his right of access to the courts must show actual prejudice."). Plaintiff's allegations about his mail and communications are vague, conclusory, do not plausibly reflect an actual violation of his right to access the courts, and do not refer to any such hindered cause of action or discrete prejudice suffered. *See* Compl. at 7, 10, 11, 12-13; Pl.'s Aff. at 3-5, 6-9.

Plaintiff's Sixth Amendment claim should be dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

*E. Plaintiff's Claim for Violation of First Amendment and RLUIPA*

Plaintiff next argues that being required to include his prior name on internal and external prison communications, rather than using his current legal name exclusively, violates his rights under RLUIPA and the First Amendment. *See* Compl. at 5, 10, 11, 12-13; Pl.'s Aff. at 3-5, 7-9. But courts, including the Tenth Circuit, have uniformly rejected such claims by prisoners, instead concluding that requiring a prisoner to include his or her incarcerated name does not violate the prisoner's rights under the Free Exercise Clause or RLUIPA. As set forth below, Defendants are entitled to summary judgment on Plaintiff's First Amendment and RLUIPA claims in Count Two.

In *Abdulhaseeb v. Saffle*, for example, the plaintiff "contended that his constitutional rights were violated by the prison's requirement that, on official forms, he use the name under which he was first incarcerated." *Abdulhaseeb*, 65 F. App'x 667, 671-72 (10th Cir. 2003). The Tenth Circuit upheld the district court's dismissal of these claims, stating:

> While appellant may have a First Amendment interest in using his changed name, that does not trump the prison's interests in security and efficient record-keeping. It is clear from the record that appellant is allowed to use his changed name, so long as he includes his incarcerated name on official forms.

*Id.* at 672 (citing *Turner v. Safley*, 482 U.S. 78 (1987)). And in *Ali v. Wingert*, the Tenth Circuit upheld the dismissal of a prisoner's claim that a Colorado regulation, which, similarly to OP-060212 section II (D)(2) and OP-030117 section I(A)(1), required inclusion of the inmate's committed name on records and mail, violated the Free Exercise Clause and RLUIPA. *See Ali*, 569 F. App'x 562, 564-65 (10th Cir. 2014) (holding that

plaintiff failed to adequately plead that the "modest requirement that both names appear" constituted a substantial burden under RLUIPA or was "anything but neutral toward religion and generally applicable" for First Amendment purposes).

A fellow district court recently dismissed a similar First Amendment claim on screening, explaining that the Tenth Circuit's ruling in *Ali*

is in accordance with every other court that has reviewed similar corrections policies requiring prisoners to use their legally changed name as an "aka." *See, e.g.*, *Hakim v. Hicks*, 223 F.3d 1244 (11th Cir. 2000) (Department of Corrections' compliance with a dual-name policy would resolve free exercise claim (citing *Mujihadeen v. Compton*, 627 F. Supp. 356 (W.D. Tenn. 1985) (prison policy requiring both committed and Muslim name to appear on inmate I.D. card did not violate inmate's Free Exercise Clause rights)); *Fawaad v. Jones*, 81 F.3d 1084, 1085-87 (11th Cir. 1996) (prison policy which required Islamic inmate who had legally changed his name while in prison to use both his legal name and name under which he was committed on all incoming and outgoing mail did not violate inmate's right to freely practice his religion under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1); *Malik v. Brown*, 16 F.3d 330, 334 (9th Cir. 1994) ("Using both the religious and the committed name is a satisfactory alternative means for an inmate to freely exercise his religion"); *Salaam v. Lockhart*, 905 F.2d 1168, 1174-75 (8th Cir. 1990) ("The a/k/a designation has been recognized by several federal courts as a reasonable alternative to prisons' committed name policies."); *Felix v. Rolan*, 833 F.2d 517, 519 (5th Cir. 1987) (holding First Amendment not violated in situation in which "prison has not refused to recognize [inmate]'s new name, it merely requires that for administrative efficiency he include his former name as an identifying alias"); *Ephraim v. Angelone*, 313 F. Supp. 2d 569, 575 (E.D. Va. 2003) ("When an inmate legally changes his name for religious purposes, the Department of Corrections, upon notice of such a change, is required to add the new name to the prison file. However, the Department of Corrections is not required to replace the inmate's old name with the new one." (citations omitted)); *Thacker v. Dixon*, 784 F. Supp. 286, 304 (E.D.N.C. 1991) (plaintiff can use his legal name; however, he must provide his committed name to insure that his records are kept in their proper order); *Riggins v. Clarke*, 403 F. App'x 292, 294 (9th Cir. 2010) (State corrections officials' enforcement of policy requiring that all prisoners use name under which they were committed to custody before any other official or religious name on all incoming and

outgoing correspondence did not violate prisoner's First Amendment rights); *Malik v. Clarke*, No. C07-5160 RJB/KLS, 2009 WL 990874, at *8 (W.D. Wash. Apr. 13, 2009) (DOC has legitimate penological interests in requiring Plaintiff to use his committed name first on his incoming mail).

*Allah v. Colo. Dep't of Corr.*, No. 14-CV-3187, 2015 WL 1867565, at *3 (D. Colo. Apr. 22, 2015) (citations amended) (concluding that "as a matter of law, Plaintiff's allegations that Defendants violated his constitutional rights by requiring the use of both his religious name and his commitment name fails to state a claim to which relief can be granted").

The Eleventh Circuit Court of Appeals likewise has indicated that a dual-name policy such as ODOC's adequately allows inmates to exercise their religion and resolves any free exercise claim. *See United States v. Baker*, 415 F.3d 1273, 1274 (11th Cir. 2005) ("A 'dual-name policy,' whereby an inmate is permitted to use a religious name in conjunction with his commitment name, always is sufficient to satisfy an inmate's free exercise claim involving use of a religious name." (internal quotation marks omitted)). Relevant to ODOC's policy requiring an amended judgment and sentence in order to change an inmate's commitment name, the *Baker* court additionally explained:

> The Fourth and Sixth Circuits have held . . . that an inmate who legally changes his name does not have a constitutional right to have his pre-existing prison records altered to reflect his newly adopted name. *See Barrett v. Va.*, 689 F.2d 498, 503 (4th Cir. 1982); *Imam Ali Abdullah Akbar v. Canney*, 634 F.2d 339, 340 (6th Cir. 1980). We agree with the reasoning of our sister circuits and hold that although an inmate is entitled to prospective recognition of a legal name change, by means of a "dual-name policy," an inmate is not entitled to have documents that pre-dated his legal name change altered.

*Id.*; *see* OP-060212 § II(D); *cf. Thundering Bad Heart Bull v. Wyoming*, 87 F. App'x 698, 699 (10th Cir. 2004) (affirming dismissal of constitutional claim where plaintiff alleged

that "prison officials told him that they could not recognize his adoptive name because it was not on his mittimus papers and that he needed to get a court order").

The undisputed facts of the record reflect that Plaintiff has tried, but failed, to have his criminal judgment and sentence amended to bear his current legal name. *See* Suppl. to S.R. Ex. 6, at 2-7, 14-20. Pursuant to ODOC policy, Plaintiff's prison records therefore must continue to include his prior name, although his new name also appears, and his mail, including grievance appeals, must contain both names. *See* OP-060201 § I(A)(1); OP-060212 §§ II(A)(1), II(D); OP-030117 §§ I(A)(1)(a), III(B)(2). Although the ODOC two-name policies do not expressly extend to internal grievance submissions, such a requirement is a reasonable construction of the Grievance Process. *See* OP-090124 §§ III(F) (requiring that the complaining offender must sign and submit the grievance), III(G) ("No person may submit a grievance on behalf of another person . . . ."), X(A)(1) (recordkeeping requirements for offender grievance records), XI (same); *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (recognizing prison officials' ability to rely upon a "reasonable interpretation" of grievance requirements).

Plaintiff, in response, has presented what appears to be a page from an ODOC General Counsel Opinion, signed on August 29, 1990. *See* Pl.'s Resp. at 5 n.3; GC-90-05, Pl.'s Resp. Ex. 5 (Doc. No. 98-5). This Opinion states in relevant part: "[ODOC] cannot punish the inmate his use of the new name nor can any services or benefits be denied to the inmate (ie, if he submits a request under the new name, it may not be returned for that reason, nor can his mail be refused if sent to the facility under the new name[.]"). GC-90-05, at 1. Plaintiff argues that this 1990 Opinion constitutes current

"ODOC policy" and that the Tenth Circuit recognized this fact in *Shabazz v. Johnson*, Nos. 91-6005, -6054, 1991 WL 196997 (10th Cir. Oct. 3, 1991). *See* Pl.'s Resp. at 5, 15, 27.

*Shabazz* and GC-90-05 cannot be relied upon for this proposition, however. First, in *Shabazz*, the Tenth Circuit did not itself "recogniz[e] an inmate's right to use his legal name" as argued by Plaintiff, Pl.'s Resp. at 27. Rather, the Tenth Circuit simply recognized the then-unsettled nature of ODOC's policy with respect to post-incarceration legal-name changes. The plaintiff, an Oklahoma state prisoner, had legally changed his name for religious reasons after the date of incarceration and alleged that prison officials were infringing upon his religious rights by referring to him by his former name. *See Shabazz*, 1991 WL 196997, at *1. On appeal of the district court's dismissal of this claim, the Tenth Circuit noted that ODOC's position on legal-name changes was not clearly established and remanded the case with instructions to the defendants to report to the district court the defendants' policy regarding the plaintiff's request for use of only his Islamic name, so that the district court could determine whether there was any merit to the plaintiff's claim. *See id.* at *3. The references in *Shabazz* to a possible First Amendment right were made in the context of describing that particular plaintiff's claims and those particular defendants' objections; the discussion as to ODOC's ongoing policy changes was limited to the facts of the case at hand. *See id.* at *2-3. There was no holding made to the effect that an inmate possesses a right to exclusively use his or her post-incarceration legal name in the prison setting. And the Tenth Circuit's remand did not issue any finding or recommendation as to the merits of that plaintiff's claim. *See id.*

Second, even assuming for summary judgment purposes that GC-90-05 constituted ODOC's official policy when authored fifteen years ago, the record evidence makes clear that this is no longer the case. ODOC's inmate and facility governance is now implemented through the agency's official Operations Memoranda—e.g., OP-090124, OP-060201, OP-060212, and OP-030117. *See* Suppl. to S.R. Exs. 2, 3, 4, 5; Pl.'s Resp. Ex. 7 (Doc. No. 98-7) (ODOC Director Jones' May 2011 affidavit stating that "the director approves ODOC procedures," that "ODOC procedures give effect to ODOC policies," that "only the director may give effect to a change in ODOC policies via revision of ODOC procedures," and that "ODOC policies are created and approved by the Board of Corrections"). There is no reasonable inference to be drawn from the record before the Court that the 1990 General Counsel Opinion served as ODOC's policy regarding inmates' legal names during the time period at issue in this lawsuit.

Plaintiff also cites *Malik v. Brown*, a Ninth Circuit case dealing with a prison's processing of mail that was cited by the Tenth Circuit in *Abdulhaseeb*. *See Malik*, 71 F.3d 724 (9th Cir. 1995); *Abdulhaseeb*, 65 F. App'x at 672. While *Malik* notes that courts have recognized an inmate's First Amendment interest in using his or her religious name, the decision specifically notes that such an interest lies not in using a "new, legal name" *exclusively* but in doing so "*in conjunction with* [the inmate's] committed name." *Malik*, 71 F.3d at 727, 730 (emphasis added). *Malik* actually is inconsistent with Plaintiff's assertion that his records must be amended and he must be permitted to exclusively use his religious name, stating: "[A]n inmate cannot compel a prison to reorganize its filing system to reflect the new name." *Id.* at 727. The court explained that

the four-factor *Turner* analysis applies to prisoner religious-name First Amendment cases and noted: "[P]risons are required to take simple measures to accommodate prisoner's First Amendment rights. Allowing a prisoner to put his religious name next to his committed name on outgoing mail is an obvious, easy accommodation." *Id.* at 729 (internal quotation marks omitted).

Plaintiff's ability to prove a violation of the First Amendment or a substantial burden under RLUIPA based upon ODOC's policies or execution of those policies is foreclosed by the weight of authority and by the evidence in the record. *See Abdulhaseeb*, 65 F. App'x at 672; *Ali*, 569 F. App'x at 564-65; *Baker*, 415 F.3d at 1274. Regarding the First Amendment claim, ODOC Defendants are entitled to qualified immunity in their individual capacities because Plaintiff has not established that these Defendants violated a constitutional right, let alone a right clearly established at the relevant time. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) ("When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."). With respect to both the First Amendment and RLUIPA claims, Plaintiff's citations to *Shabazz*, *Malik*, and GC-90-05 fail to create a genuine issue regarding any fact material to determination of whether ODOC's policies are unconstitutional or whether application of ODOC's policies has violated Plaintiff's First Amendment and RLUIPA rights. *See Allah*, 2015 WL 1867565, at *2-3; *Ali*, 569 F. App'x at 564-65; *Baker*, 415 F.3d at 1274. All Defendants therefore are entitled to summary judgment on these claims.

*F. Plaintiff's Claim for Violation of Equal Protection Guarantee of Fourteenth Amendment*

Liberally construed, Plaintiff asserts that Defendants' actions with respect to requiring him to use his prior name in the prison setting discriminated against him on the basis of his religion and therefore violated his right to equal protection of the laws as guaranteed by the Fourteenth Amendment. *See* Compl. at 10 (citing the Fourteenth Amendment), 14 ("Other similar situated inmate[s] do not suffer like this."). Although Defendants have not separately addressed this claim, the undersigned recommends dismissal pursuant to the Court's screening obligation under 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

To state an equal protection claim, Plaintiff must allege that he has intentionally been treated differently than similarly situated individuals. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998). Further, Plaintiff must allege facts in the Complaint plausibly showing that he is a member of a protected class, or that he asserted a fundamental right. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). Finally, "to prevail on his equal protection claim [the plaintiff] would have to prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) (internal quotation marks omitted); *see also Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995).

Plaintiff's Complaint contains no facts to establish "above a speculative level" that Plaintiff was intentionally treated differently from others similarly situated to him, and therefore his equal protection claim cannot proceed. *See* Compl. at 5, 7, 10, 11, 12-13; *Twombly*, 550 U.S. at 555; *Barney*, 143 F.3d at 1312. "[Plaintiff's] allegations are merely conclusory in that they do not allege the factual basis for an equal protection claim, and even pro se litigants must do more than make mere conclusory statements regarding constitutional claims." *Brown*, 63 F.3d at 972. Other than his conclusion that others "do not suffer like this," Plaintiff does not describe any other inmates' treatment with respect to his claimed legal-name issues—much less specifically plead how he was treated differently from any other inmate. *See, e.g.*, *Abdulhaseeb*, 65 F. App'x at 673-74 (concluding that Muslim plaintiff stated an equal protection claim where he alleged that he was denied opportunities that were granted to Christians). Plaintiff's allegations regarding events at LCF, accepted as true, do not plausibly suggest that Plaintiff has been denied treatment equal to that provided to others who are similar "in every relevant respect." *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994); Compl. at 10, 14. Plaintiff therefore fails to state a cognizable equal protection claim against any Defendant, and such claims should be dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

### G. Plaintiff's Claim for Violation of Eighth Amendment

Finally, Plaintiff alleges that Defendants' insistence that he use his incarcerated name on requests for medical care resulted in a violation of his rights under the Eighth Amendment. *See* Compl. at 7, 10, 11, 12-13; Pl.'s Aff. at 5, 6, 7, 8.

1. <u>Substantive Requirements of Eighth Amendment Deliberate Indifference to Medical Need Claim</u>

It is well-established that "[a] prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A two-prong standard governs claims of deliberate indifference to serious medical needs. To establish the objective prong of this Eighth Amendment claim, Plaintiff must show "that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

> We have said that a medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim. Moreover, a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.

*Id.* (citations and internal quotation marks omitted).

To establish the subjective component—i.e., deliberate indifference to a substantial risk of harm—Plaintiff must show that the prison official in question acted with a "culpable state of mind." *Id.*; *Farmer*, 511 U.S. at 834, 836.

> The subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference. A prison medical professional who serves solely as a gatekeeper

for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role.

*Mata*, 427 F.3d at 751 (alteration, omission, citations, and internal quotation marks omitted); *see also Gamble*, 429 U.S. at 104-05 (noting that deliberate indifference can be manifested "by prison guards in intentionally denying or delaying access to medical care").

### 2. Plaintiff's Allegations

Plaintiff alleges that Defendants' failure to provide medical care when requested under only his legal name cause him to be denied "medical treatment for serious chronic health problem[s] with callous, ma[lic]ious, and sadistic deliberate indifferen[ce] to [Plaintiff's] quality and quan[t]ity of life." Compl. at 5. The Complaint asserts that Plaintiff sought medical treatment beginning in July 2011 but had not received a medical appointment as of October 13, 2011. Compl. at 10, 12. Plaintiff further alleges that at the time he filed his Complaint in September 2013 he had received no medical treatment "for serious chronic health problems since April 2013." *Id.* at 7, 13. These serious chronic problems are alleged to include: hypertension, asthma, prostate gland damage, blood clots, high cholesterol, pain, vision loss, ringing in ears, muscle cramps, kidney damage, arthritis, bulging discs, headaches, "mental function and focus," pain in groin traveling down the legs, dry skin, muscle and bone loss, and "minor heart/stroke leaving [Plaintiff] with left arm numb and useless for 6 days during August 2013." *Id.* at 11; Pl.'s Aff. at 5.

### 3. Dismissal of Individual-Capacity Claims Against ODOC Defendants

To succeed on a § 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States," and that the violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see* 42 U.S.C. § 1983; *Phillips v. Tiona*, 508 F. App'x 737, 750 (10th Cir. 2013) ("We have long assumed that employees of a private prison act under color of state law for purposes of § 1983 suits by inmates . . . ."). When a defendant is sued in his or her individual capacity under § 1983, the plaintiff must establish, among other things, the defendant's "personal involvement or participation" in the alleged violation of a federal right. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *Iqbal*, 556 U.S. at 676.

ODOC Defendants Jones, McCoy, and Morton argue that Plaintiff fails to allege their personal participation in the claimed Eighth Amendment violation and thus fails to show that these Defendants violated Plaintiff's constitutional right. *See* ODOC Defs.' Mot. at 33-34. In support, these Defendants cite *Gallagher v. Shelton*, in which the Tenth Circuit stated that "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by Plaintiff, does not establish personal participation under § 1983." *See id.*; *Gallagher*, 587 F.3d 1063, 1069 (10th Cir. 2009). ODOC Defendants argue that the allegations against them only "refer to their role in the grievance process." ODOC Defs.' Mot. at 34.

Plaintiff alleges that Defendant Jones, in his role as ARA, along with Defendant Morton, violated Plaintiff's rights and instructed other ODOC employees to violate Plaintiff's rights by denying Plaintiff relief on legal-name-related administrative

grievance appeals. Compl. at 12, 13; Pl's Aff. at 4. Regarding Defendant Morton, Plaintiff alleges that when he sought further relief on unidentified complaints, Defendant Morton responded on October 18, 2011, that she "will now no longer recognize Plaintiff" "to include communicating/corresponding" unless Plaintiff uses his incarcerated name. Pl.'s Aff. at 4; Compl. at 10; Compl. Ex. 1, at 43. Regarding Defendant McCoy, Plaintiff alleges that in August-September 2011 he sought a medical appointment from Defendant McCoy through his grievance appeal. Although Plaintiff alleges that Defendant McCoy did not "correct" the LCF officials' improper denial of medical care, he additionally pleads that Defendant McCoy instructed that Plaintiff receive an appointment, and that in October 2011 Defendant McCoy acknowledged that Defendant still had not received medical care. *See* Compl. at 10, 12; Pl.'s Aff. at 4; Compl. Ex. 1, at 37-42. Plaintiff further alleges that in April 2013 he filed a grievance appeal regarding the denial of medical treatment, but Defendant McCoy rejected this appeal as improperly submitted and thus failed to "correct" or "stop the unconstitutional practice of denying [Plaintiff] medical treatment because he requested it as in the past under legal name." Compl. at 13; Pl.'s Aff. at 5; Compl. Ex. 1, at 55-57.

Despite Plaintiff's attempt to implicate individual ODOC Defendants, the only actual denial or delay of medical care by any individual is alleged to have transpired at LCF and to have consisted of action or inaction by individual LCF officials (as discussed further below). *See* Compl. at 10-13; Pl.'s Aff. at 3-5. With one exception, Defendants Jones, Morton, and McCoy are alleged to have been personally involved only to the extent they denied Plaintiff administrative relief on these alleged denials or delays—an

action that "does not establish personal participation under § 1983" under governing Tenth Circuit precedent. *Gallagher*, 587 F.3d at 1069; *accord Larson v. Meek*, 240 F. App'x 777, 779, 780 (10th Cir. 2007) (affirming dismissal of claim that defendant "allowed" deprivations of state prisoner's Eighth Amendment rights "by denying his grievances"); *cf. Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (noting that there is "no independent constitutional due process right to state administrative grievance procedures" and no state-created liberty interest in the grievance process).

Plaintiff does attempt to connect Defendant McCoy's role as a medical services administrator to the actual denial or delay of medical treatment by pointing to Defendant McCoy's conduct from August to October 2011. *See* Compl. at 12; Pl.'s Aff. at 4; Compl. Ex. 1, at 37-42. As noted above, after being denied relief on a July 2011 Grievance, Plaintiff appealed, requesting that he be able to exclusively use the name "Wahiid AlAmiin," along with his unique ODOC number, "on all requests, medical services, letters, files, . . . and speaking with staff" without punishment or retaliation, and that he receive services and benefits as well as medical treatment when sought under his legal name. Compl. Ex. 1, at 37-38. On August 26, 2011, the CMO, through Defendant McCoy, responded and granted Plaintiff "Partial relief," stating that she had reviewed Plaintiff's medical record and that the health concerns conveyed through Plaintiff's medical services request had not yet been addressed. *Id.* at 39. The CMO further stated that she had contacted Defendant Danley and instructed her to schedule an appointment for Plaintiff's complaints of "bilateral ear pain, headaches, hearing loss, and knee and back pain." *Id.* A few weeks later, Plaintiff submitted a Request to Staff to Defendant

McCoy, complaining that the disposition of the grievance appeal did not grant him leave to use and be acknowledged by his legal name "exclusively." *Id.* at 40-41. On October 13, 2011, Defendant McCoy sent Plaintiff a letter explaining that the partial relief granted was in the form of contacting Defendant Danley and instructing that a medical appointment be scheduled at LCF. *See id.* at 42. Defendant McCoy stated that upon review of Plaintiff's record, it was revealed that he had not been examined regarding his medical complaints, but that another LCF official had been contacted "and instructed to schedule an appointment for you *this week*." *Id.* ("Please be assured, you *will* be examined."). Defendant McCoy further stated, "I cannot address your concern involving your purported name change to Wahiid AlAmiin, as this relates to a legal issue, not a medical issue."). *Id.*[14]

Plaintiff's attempt to show unconstitutional conduct and personal involvement by Defendant McCoy is defeated by his own pleading, which reflects that rather than facilitating the denial of medical treatment, Defendant McCoy actively sought a medical appointment for Plaintiff and otherwise assisted him in procuring medical care. *See* Compl. Ex. 1, at 39, 42. As to the remainder of the factual allegations lodged against each of the ODOC Defendants, a response to or rejection of a grievance submission, absent sufficient factual (rather than conclusory) explanation for how this action violated Plaintiff's rights, was connected to a denial of medical care, or was undertaken with a

---

[14] Though not considered for Rule 12(b)(6) purposes, the record reflects that Plaintiff did receive this appointment, on October 12, 2011. *See* S.R. at 8; S.R. Ex. 14.

culpable state of mind, is inadequate to state a plausible Eighth Amendment claim against them in their individual capacities.

This claim should be dismissed against Defendants Jones, Morton, and McCoy in their individual capacities without prejudice for failure to state a claim upon which relief can be granted under § 1983. *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the defendant's own individual actions, has violated the Constitution."); *cf. Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013) ("When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights.").[15]

### 4. LCF Defendants' Argument for Summary Judgment

The LCF Defendants (Caldwell, Danley, and Fennell) seek summary judgment on Plaintiff's Eighth Amendment claim. *See* LCF Defs.' Mot. at 14-17. Excepting recitation of the relevant standards, LCF Defendants' entire argument is as follows:

---

[15] Plaintiff also seeks prospective injunctive relief against the ODOC Director in his official capacity, in the form of "complete" medical treatment. Compl. at 15, 16; *see also id*. at 13 ("To date [Plaintiff] has been without any medical treatment for serious chronic health problems since April 2013."). Although ODOC Defendants assert that "Plaintiff's request for injuncti[ve] relief is improper," they do not explain this assertion or directly address Plaintiff's official-capacity Eighth Amendment claim and the standard applicable thereto. *See* ODOC Defs.' Mot. at 10, 33-34. Absent an adequately supported basis for dismissal, Plaintiff's official-capacity Eighth Amendment claim against Defendant Patton should remain at issue.

The Special Report submitted by LCF shows continued treatment and provision of care to the Plaintiff and there is absolutely no set of facts [that] the Plaintiff could present [that] would salvage a colorable claim from his Complaint. *See* S.R., Att. 15.

Plaintiff alleges he is being denied medical care because LCF medical has periodically directed him to submit his requests for medical care in his incarcerated name as required by [ODOC] policy. Plaintiff points to an alleged denial in treatment in 2011 when a Request for Medical care was returned directing him to include his incarcerate[d] name as the alias name used and [ODOC] number did not match. Plaintiff was directed to use his incarcerated name so as not to delay his treatment. (S.R., Att. 9, response of McPhail[.]) At best this led to a delay in treatment in 2011[,] which was addressed in his grievance number 11-410. (S.R., Att. 9).

Moreover, Plaintiff did not allege any facts or deliberate indifference on the part of Defendant Caldwell and has failed to show any direct participation of Defendant Caldwell. Thus, the Plaintiff did not meet his burden of proof on either the objective or subjective elements necessary to sustain his medical[] claim under the law and Defendants should be granted judgment.

LCF Defs.' Mot. at 16-17; Doc. Nos. 74, 76.

As a threshold matter, with respect to Plaintiff's contentions as to a 2011 delay in treatment, LCF Defendants cannot be granted summary judgment simply because prison officials' actions led "at best" to a delay in treatment. It is well-settled that a delay in medical care can constitute an Eighth Amendment violation "where the plaintiff can show the delay resulted in substantial harm." *Mata*, 427 F.3d at 751 (internal quotation marks omitted).

Further, LCF Defendants' request for summary judgment is largely premised upon the contents of "Attachment 15" to the Special Report, which is stated to reflect that Plaintiff received "continued treatment and provision of care." *See* LCF Defs.' Mot. at 16-17. As a threshold matter, a single broad reference to what is elsewhere described as a

collection of Plaintiff's LCF medical treatment records, with no explanation of specific facts reflected therein and no attempt to direct the Court to those facts, is insufficient for a party to meet its burden on summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A) (prescribing that party asserting that a fact cannot be genuinely disputed "must support the assertion" by citing "to particular parts of materials in the record"); *cf. Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671-72 (10th Cir. 1998) (explaining that the district court "is not required" "to go beyond the referenced portions" of the record at summary judgment). Regardless, there is no "Attachment 15." Only fourteen exhibits are attached to the Special Report. *See* S.R. Exs. 1-14 (Doc. Nos. 59-1 to 59-14).

Plaintiff noted this omission in his Response and submitted an affidavit pursuant to Federal Rule of Civil Procedure 56(d), in which he stated under penalty of perjury: that Defendants have control of his medical records; that these records establish all of Plaintiff's chronic conditions, diagnosed illnesses, and prescribed treatment; and that summary judgment cannot be granted for Defendants because his medical records would refute Defendants' contentions "by showing that Plaintiff has not gotten medical care throughout his incarceration at LCF." Pl.'s R. 56(d) Aff., Pl.'s Resp. Ex. 18 (Doc. No. 98-18) at 1-3; Pl.'s Resp. at 2, 25-26; *see also* Order of Oct. 15, 2014 (Doc. No. 16) at 2 ("Whenever appropriate, medical and psychiatric records shall be included in the special report."). The Special Report does contain one three-page record reflecting that Plaintiff received a medical appointment for ear, knee, and back pain on October 12, 2011. *See* S.R. Ex. 14 (Doc. No. 59-14). Plaintiff argues that this record is incomplete and actually totals six pages. *See* Pl.'s Resp. at 25. Plaintiff also lists specific documents that he

contends are in Defendants' possession and which he has been unable to obtain through discovery, including progress notes, radiology reports, "[p]roblem/chronic list DOC 140106 A which list[s] all [a]ilments that have been diagnosed for medical treatment," and "medical provider orders DOC 140106F." *Id.* at 26. Plaintiff asserts that these documents will show the participation of the identified Defendants, the results of his medical treatment, and the existence of genuine fact issues as to both the objective and subjective elements of his Eighth Amendment claim. *See id.* at 2, 25-26; Pl.'s R. 56(d) Aff. at 1-2.

Plaintiff's Rule 56(d) affidavit adequately "identif[ies] the probable facts not available and what steps have been taken to obtain those facts." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) (internal quotation marks omitted). And LCF Defendants may not rely upon documents that are not included in the record to establish that Plaintiff suffered no substantial harm from the delay in medical care in 2011 or that Plaintiff cannot prove his Eighth Amendment rights were violated at any time from 2011 to September 2013. Nor may LCF Defendants rely upon these absent documents to establish any LCF Defendant's lack of personal participation or involvement in the alleged constitutional violation. Under such circumstances, LCF Defendants Caldwell, Danley, and Fennell have failed to support their assertion of absence of a genuine fact issue by "citing to particular parts of materials in the record," and therefore are not entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim. *See* Fed. R. Civ. P. 56(c)(1)(A).

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Motions to Dismiss/for Summary Judgment filed by Defendants Jones, Patton, McCoy, Morton, Caldwell, Danley, and Fennell (Doc. Nos. 60, 67) be GRANTED IN PART AND DENIED IN PART. Specifically, with respect to Count Two, the Legal-Name Claims:

1. Plaintiff's Sixth Amendment access-to-courts claim and Fourteenth Amendment equal protection claim should be dismissed without prejudice for failure to state a claim upon which relief can be granted;

2. Summary judgment should be granted in all Defendants' favor on Plaintiff's First Amendment and RLUIPA claims; and

3. Plaintiff's Eighth Amendment claim for denial of medical treatment should be dismissed without prejudice as to Defendants Jones, Morton, and McCoy in their individual capacities, but should remain pending against Defendant Patton in his official capacity and against Defendants Caldwell, Danley, and Fennell.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by September 20, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 30th day of August, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE